United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 3, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-30324
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BERNARD ALLEN CHARLES, also known as Bernard Charles,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Bernard Allen Charles ("Charles") was indicted for possession with intent to distribute more than 50 grams of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924 (c)(1)(A) and (c)(1)(B)(ii), and two counts of forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924(d)(1). Subsequently, the government filed a superseding indictment that added additional charges for possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d) and possession of a silencer without a serial number in violation of 26 U.S.C. § 5861(i).

Prior to trial, Charles moved to suppress all the physical evidence discovered at the time of his arrest and subsequently seized pursuant to a search warrant. This motion was denied and he was convicted by a jury on all counts. After the trial, Charles filed a written motion for a judgment of acquittal, which the district court also denied. Charles was sentenced to 620 months of imprisonment. On appeal, Charles challenges the denial of both motions. Because we find no error, we affirm his conviction on all counts.

## I.

On September 15, 2003, Chief Brannon Decou of the Broussard Police Department received an anonymous tip that Bernard Charles was storing narcotics in a storage facility on Louisiana Highway 182. The tipster also informed Chief Decou that Charles drove a white four-door Dodge pick-up truck. Chief Decou contacted the facility to verify the tip and was given a list of tenants, which indicated that unit F-19 was leased by Paula Charles. Chief Decou then confirmed that Paula and Bernard Charles shared the same address, that Paula Charles was the registered owner of a white Dodge pick-up, and that Bernard Charles was the subject of several outstanding warrants, most for traffic offenses, both in Broussard and in neighboring jurisdictions. With the consent of the storage facility owner, Chief Decou brought a drug dog to sweep the F building and the dog alerted on unit F-19, the unit rented to Paula Charles.

2

Chief Decou did not attempt to obtain an arrest warrant for Charles. On the morning of September 17, 2003, Chief Decou, Sergeant Darryl Vernon, and Chief Deputy Timothy Picard began conducting surveillance on the Charles's storage unit. Just after 8:00 a.m., the officers saw a white four-door Dodge pick-up enter the storage facility. Deputy Picard observed through binoculars as the driver opened the unit, entered it, brought some envelopes back to the truck, and reentered the unit. At this point, the officers decided to arrest Charles.

Picard and Vernon approached the unit with their guns drawn. When they reached the entrance, Charles was standing between the left wall of the storage unit and the driver's door of a convertible parked inside the unit. When the officers identified themselves, Charles dropped an envelope into the open convertible. Charles was ordered out of the unit onto the ground, where he was arrested and cuffed without incident. As Charles was being read his Miranda rights and escorted to a police cruiser, Picard entered the unit and checked inside, under, and around the convertible to ensure that there were not other occupants in the unit. While inside the unit, Picard noticed that the envelope Charles had dropped into the convertible, now open on the front seat, contained a substance he recognized as crack cocaine. He also saw a partially disassembled firearm on top of a cardboard box in the corner of the storage unit.

Once the preliminary sweep was complete, Picard "froze" the scene and the officers obtained a search warrant based in part upon Picard's observations while in the unit. Upon executing the warrant, officers seized (1) a partially disassembled SWD model M12 .380 caliber semi-automatic pistol, (2) a homemade silencer threaded to match that weapon, (3) a total quantity of 447.18 grams of crack cocaine, and (4) approximately $3,000 in currency.

## II.

### A.

Charles contends on appeal that the district court erred in denying his motion to suppress the evidence obtained from the storage unit because, he argues, the initial warrantless entry into the unit was unconstitutional and the results of that entry led the officers to seek a search warrant. In reviewing the denial of a motion to suppress, "the district court's findings of facts are reviewed for clear error, viewing the evidence in the light most favorable to the government." United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005) (citing United States v. Cantu, 230 F.3d 148, 150 (5th Cir. 2000)). The district court's conclusions of law are reviewed de novo. United States v. Lopez-Moreno, 420 F.3d 420, 429 (5th Cir. 2005) (citing United States v. Hicks, 389 F.3d 514, 526 (5th Cir. 2004)). The panel may affirm the district court's decision on any basis established by the record. United States v. Ibarra-Sanchez, 199 F.3d 753, 758 (5th Cir. 1999) (citing United States v. McSween, 53 F.3d 684, 687 n.3 (5th Cir. 1995)).

4

Warrantless searches "are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions." United States v. Paige, 136 F.3d 1012, 1022 (5th Cir. 1998) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372 (1993)) (internal quotations and citations omitted in original). An arrest may be accompanied by a search incident to that arrest, to prevent the arrestee from accessing a weapon or destroying evidence. United States v. Green, 324 F.3d 375, 378 (5th Cir. 2003) (citing Chimel v. California, 395 U.S. 752, 763 (1969)). This type of search is limited to the arrestee's person and to the area within his immediate control. Id. In some circumstances, police may also conduct a protective sweep of the area around an arrest scene, which may be "no more than a cursory inspection of those spaces where a person may be found" and "may last[] no longer than is necessary to dispel the reasonable suspicion of danger" nor "longer than the police are justified in remaining on the premises." United States v. Gould, 364 F.3d 578, 587 (5th Cir.) (en banc) (quoting Maryland v. Buie, 494 U.S. 325, 335-36 (1990)) (alteration in original), cert. denied, 543 U.S. 955 (2004). Charles argues that the search performed by Officer Picard falls under neither of these exceptions. He asserts that because he was arrested outside of the storage unit, no area inside the unit was within his immediate control at the time of arrest. He also maintains that, because the officers on the scene could have

had no "reasonable suspicion" that any other individuals were present in the storage unit, a protective sweep was not justified.

Charles fails to recognize, however, that under the Supreme Court's holding in Maryland v. Buie, the police may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be launched." 494 U.S. at 334 (emphasis added). Testimony offered at trial indicated that Charles was arrested just at the entrance to the open storage unit, which measured approximately 10 feet wide and 25 feet deep. Officer Picard entered the storage unit to ensure that no other person was hiding in, under, or around the convertible. Under Buie, Officer Picard's cursory sweep of the unit immediately adjacent to the site of the arrest was permissible, even without probable cause or reasonable suspicion.[1] Because Officer Picard's entrance into the storage unit was lawful, the district court did not err in denying the motion to suppress.[2]

---

[1] The government argued, and the district court found, that Picard's survey of the storage unit was based on his concern that another individual might be there.

[2] We note that although "[t]he seizure of obviously incriminating evidence found during a protective sweep is constitutionally permissible pursuant to the plain view doctrine," the arresting officers in this case took the additional precaution of sealing the scene and obtaining a search warrant before removing any evidence. Waldrop, 404 F.3d at 369 (citing United States v. Munoz, 150 F.3d 401, 411 (5th Cir. 1998)).

III.

A.

Charles also argues on appeal that the district court erred in denying his motion for acquittal. He maintains that the evidence at trial was insufficient to show that he possessed the firearm found in the storage unit in furtherance of a drug trafficking offense as required by 18 U.S.C. § 924(c)(1)(A). Secondly, he argues -- in a one-sentence footnote -- that because the silencer was not attached to the firearm when it was found, the jury's finding that the firearm was "equipped with a silencer" pursuant to 18 U.S.C. § 924(c)(1)(B) was not supported by the evidence. We review each issue in turn.

The district court's denial of a motion for judgment of acquittal is reviewed de novo. United States v. Delgado, 256 F.3d 264, 273 (5th Cir. 2001) (citing United States v. Myers, 104 F.3d 76, 78 (5th Cir. 1997)). The jury's verdict will be affirmed if any rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). In conducting this inquiry, we must examine the evidence as a whole and construe it in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict. Delgado, 256 F.3d at 273-74.

In deciding whether Charles possessed the gun in furtherance of his drug trafficking, we first note that the "mere presence" of a firearm at the scene of drug activity does not alone amount to possession in furtherance of that activity. Rather, the government must present "evidence more specific to the criminal defendant, showing that his or her possession actually furthered the drug trafficking offense." United States v. Ceballos-Torres, 218 F.3d 409, 414 (5th Cir. 2000). This court considers a list of factors in determining whether a firearm is used "in furtherance" of a drug-trafficking offense: (1) the type of drug activity being conducted; (2) the accessibility of the firearm; (3) the type of weapon; (4) whether the weapon is stolen; (5) whether the possession is lawful; (6) whether the gun is loaded; (7) the weapon's proximity to drugs or drug profits; and (8) the time and circumstances under which the gun is found. Id. at 414-15.

The evidence introduced at Charles's trial showed that the weapon discovered in the storage unit was a .380 caliber semi-automatic "Mack" pistol. Although disassembled, it could have been made ready for use in short order. The weapon was found in close proximity to over 400 grams of crack cocaine and a large amount of currency. The weapon was also located near an unregistered silencer modified to fit it. Furthermore, as a convicted felon, Charles was not permitted to possess any firearm for any purpose. Considering the evidence presented, the jury reasonably could have

found that Charles possessed the weapon in furtherance of a drug trafficking offense.

Charles's arguments to the contrary are not persuasive. He advocates at length for the application of the Sixth Circuit rule in United States v. Mackey, which requires that for a firearm to be possessed in furtherance of a drug crime, it "must be strategically located so that it is quickly and easily available for use." 265 F.3d 457, 462 (6th Cir. 2001). Because the firearm at issue was found unloaded and partially disassembled, Charles maintains that it could not have been quickly and easily available for use. Even if we were to adopt the Mackey rule as binding on this court, however, the fact that the firearm at issue was not ready for immediate use does not mean that it was not "quickly and easily available for use." The record shows that the semi-automatic pistol was operable and that a person familiar with the weapon could have quickly reassembled it for use. Even under his proposed test, therefore, Charles's argument fails.

Charles also maintains that the circumstances surrounding the discovery of the firearm cannot support his conviction because the firearm was found in a locked storage unit leased to someone other than Charles (i.e. Paula Charles); furthermore no evidence was presented that he ever sold drugs out of the storage unit or that he expected anyone to be present the day the firearm was seized. Charles notes that most of the drugs were found in the convertible, which was not registered to him and that none of his prints were

9

lifted off the gun or silencer. Although Charles is correct that the evidence presented at trial did not rule out any theory of innocence, the evidence is certainly enough that a reasonable trier of fact could have concluded that the elements of the offense were established beyond a reasonable doubt. See United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995) (en banc) ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt.") (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982)), aff'd on other grounds, 462 U.S. 356 (1983). We have upheld convictions under this statute on the basis of similar factual scenarios. See Ceballos-Torres, 218 F.3d at 415 (9 mm Glock handgun found together with 569.8 grams of cocaine and $1,360 in cash in defendant's bedroom); United States v. Starks, 145 Fed. Appx. 939, 941 (5th Cir. 2005) (loaded .38 revolver and 200 grams of cocaine base were found in a locked bedroom to which defendant had a key) (per curiam) (unpublished opinion); United States v. Coleman, 145 Fed. Appx. 859, 860 (5th Cir. 2005) (a firearm, drugs, and two magazines loaded with ammunition were found in defendant's dresser) (per curiam) (unpublished opinion). In short, the sum of the relevant evidence presented at trial, as outlined in the Ceballos-Torres factors, is sufficient to support the jury's finding that Charles possessed the firearm in furtherance of a drug trafficking crime.

C.

10

With respect to the silencer, Charles contends that because it was not attached to the firearm when it was found, the jury's finding that the firearm was "equipped with a silencer" pursuant to 18 U.S.C. § 924(c)(1)(B)(ii) is not supported by the evidence. Charles raises this argument in a one-sentence footnote and provides no authority for the proposition. Inadequately briefed issues are deemed abandoned. Dardar v. LaFourche Realty Co., 985 F.2d 824, 831 (5th Cir. 1993) (citing Friou v. Phillips Petroleum Co., 948 F.2d 972, 974 (5th Cir. 1991)); Harris v. Plastics Mfg. Co., 617 F.2d 438, 440 (5th Cir. 1980). A single conclusory sentence in a footnote is insufficient to raise an issue for review. See Beazley v. Johnson, 242 F.3d 248, 270 (5th Cir. 2001). However, we do note that the record shows that the unregistered silencer was found in close proximity to the firearm for which it was specially threaded. Thus, the evidence appears sufficient to support the jury's finding that the firearm was equipped with the silencer.

IV.

For all of the foregoing reasons, the district court's denial of the motion to suppress and its denial of the motion for acquittal are

AFFIRMED.

11