IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-51100

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JASON JULES FERNANDES

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CR-80-1

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Having conditionally pleaded guilty to possession with intent to distribute LSD and to possession of a firearm in furtherance of a drug-trafficking crime, Jason Jules Fernandes appeals the denial of his motion to suppress. Primarily at issue are whether: (1) Fernandes' encounter with Detectives was consensual, rather than a seizure under the Fourth Amendment; (2) Fernandes' incriminatory statements were voluntary; and (3) he consented to a Detective's entering his apartment. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In January 2007, the Austin Police Department received a confidential tip that Fernandes, a University of Texas student, was selling marijuana and psychedelic mushrooms out of his apartment, and that he kept a firearm there. Detective Walker attempted to verify the tip but was only able to confirm that Fernandes lived at the address provided by the informant. (At the suppression hearing, Detective Walker testified that information provided by confidential informants is not automatically taken at face value because informants sometimes have an incentive to lie.)

Given the lack of corroboration of the confidential informant's tip, Detective Walker and his partner, Detective Bryant, decided to initiate a consensual encounter, more commonly referred to as a "knock-and-talk", on 31 January 2007 with Fernandes at his apartment. Both Detectives wore plain clothes, arrived in an unmarked car, and concealed their weapons. Detective Bryant waited at the bottom of the stairs to Fernandes' residence, while Detective Walker climbed the stairs and, after activating a digital audio recorder, knocked on the door. (The recording lasts approximately 45 minutes. A partial transcript and an audio copy were introduced at the suppression hearing.)

When Fernandes answered the door, Detective Walker informed him that he and Detective Bryant were police officers and asked to speak with him outside. Fernandes complied, and accompanied Detective Walker down the stairs to the yard. He told the Detectives that his girlfriend was in the apartment. The Detectives told Fernandes they were responding to a complaint from a neighbor who had smelled marijuana coming from the apartment. Detective Walker told Fernandes:

> I don't want you to get in any trouble. That's not why I'm here. I'm
> here to respond to a complaint. . . . And if I can respond to this

> complaint and say I've spoke to Jason, and he gave me the bong, and I went away, then we're over with it, okay.

In reality, there had been no complaint by a neighbor; the Detectives wanted consensual access to Fernandes' apartment.

Detective Walker described Fernandes as being "completely cooperative" in the investigation. Fernandes readily led the Detectives to the garage, where Fernandes produced a bong. At this point, Detective Walker stated: "This is a pretty minor deal. But what I'm concerned with is that we might be leaving anything illegal up in your apartment. Is [sic] there no other bongs up there because --". Fernandes stated that he had already produced all of his bongs. Detective Bryant then persisted in trying to gain access to the upstairs apartment: "Where is your marijuana at [sic]? I know you've got at least a dime bag somewhere". Fernandes admitted he had marijuana in his apartment.

Fernandes offered to retrieve the marijuana, but the Detectives insisted that he not go in his apartment alone. Detective Bryant stated: "Here's our dilemma. We can't allow you to go in there and retrieve illegal narcotics without us going with you. And the reason for that is because that would put you in a situation where you would have to try and destroy them". Fernandes told the Detectives he had a couple of ounces of marijuana in a jar on the floor of his apartment; he then slipped inside the apartment to retrieve the jar.

At this point, Detective Walker asked: "Can I follow you inside just to grab it, Jason?" The audio recording and transcript do not provide Fernandes' response; however, Detective Walker testified at the suppression hearing that Fernandes mumbled, "yeah", or some similar affirmative statement. Detective Walker then followed Fernandes into the apartment, where Fernandes picked up a jar containing marijuana. Upon Fernandes' producing the marijuana, Detective Walker inquired whether there was additional contraband in the apartment. Fernandes replied there was not. At this point, it is not clear how

far into the apartment Detective Walker proceeded; he testified at the suppression hearing that he remained just inside the threshold of the apartment and outside the bedroom from which Fernandes retrieved the marijuana.

Fernandes and Detective Walker then went back downstairs, where the Detective explained: "When I walked in here to get that little bit of weed, I saw a money counter, I saw a digital scale, I saw baggies, I saw everything somebody needs to sell weed". He then asked for consent to search the apartment; Fernandes refused and requested an attorney.

Detective Bryant placed Fernandes under arrest and read him his Miranda rights. According to the annotated transcript of the encounter introduced by Fernandes, approximately 11 minutes elapsed between when the Detectives arrived at the apartment and Fernandes and his girlfriend were read their Miranda rights.

Detective Walker stepped into the apartment and took photographs of the scene to secure it before leaving to obtain a search warrant. Fernandes and his girlfriend Jackie were detained until a search team arrived. When the search warrant was executed, approximately $250,000 worth of marijuana was found, as well as 1200 doses of LSD and a Ruger .45 caliber semi-automatic pistol.

Fernandes moved in district court to suppress the evidence seized in his apartment, as well as his incriminating statements to the Detectives. An evidentiary hearing was held on 29 May 2007, at which Detectives Walker and Bryant, as well as Fernandes, testified. As noted, the audio recording and partial transcript were introduced.

On 4 June, through a detailed 14-page order, that motion was denied. On 28 June, a motion to reconsider was denied through an even more detailed 26-page order. On 29 June, Fernandes entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress. He was sentenced, inter alia, to 147 months' imprisonment.

II.

In maintaining the district court erred in denying his motion to suppress, Fernandes claims the "knock-and-talk" strategy employed by the Detectives constituted an unlawful seizure under the Fourth Amendment. As a result, Fernandes maintains, both his incriminating statements and Detective Walker's entry into Fernandes' apartment were the fruits of that illegality. He also contends that his statements to the Detectives were not voluntary, and that he did not consent to the entry of his apartment.

In reviewing a ruling on a motion to suppress, the district court's legal conclusions are reviewed de novo; its factual findings, only for clear error, viewing the evidence in the light most favorable to the prevailing party. United States v. Charles, 469 F.3d 402, 405 (5th Cir. 2006), cert denied, 127 S. Ct. 1505 (2007). A factual finding by the district court is clearly erroneous only if, based on our review of the entire record, we are "left with the definite and firm conviction that a mistake has been committed". Anderson v. Sch. Bd. of Madison County, 517 F.3d 292, 296 (5th Cir. 2008) (citation and internal quotation marks omitted). "The panel may affirm the district court's decision on any basis established by the record." Charles, 469 F.3d at 405 (citing United States v. Ibarra-Sanchez, 199 F.3d 753, 758 (5th Cir. 1999)).

A.

Consensual encounters in which an individual voluntarily and willingly agrees to speak to the police are not seizures and may be initiated by the police without probable cause or reasonable suspicion. Florida v. Bostick, 501 U.S. 429, 434 (1991). In this regard, the Supreme Court has held that mere questioning of an individual by the police does not result in a seizure, "[s]o long as a reasonable person would feel free to disregard the police and go about his business". Id. (citation and internal quotation marks omitted). Our court has recognized the "knock-and-talk" strategy to constitute such a reasonable,

noncustodial investigative tool. United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001); see also United States v. Gould, 364 F.3d 578, 590 (5th Cir. 2004) (en banc).

The district court found the initial interaction between Fernandes and the Detectives constituted a consensual encounter. This is a finding of fact, subject to reversal only if it is clearly erroneous. United States v. Gonzales, 79 F.3d 413, 419 (5th Cir. 1996). Fernandes asserts that the "knock-and-talk" conducted by the Detectives was not a consensual encounter but rather an investigatory stop, under Terry v. Ohio, 392 U.S. 1 (1968), which was unconstitutionally conducted without reasonable suspicion.

For determining whether the encounter was a Terry-stop seizure, rather than a consensual encounter, we must determine objectively whether, based on the Detectives' conduct, a reasonable person would have believed he was free to refuse to speak with the Detectives. Bostick, 501 U.S. at 434. In making this determination, we consider the totality of the circumstances surrounding the incident from the perspective of an innocent person. United States v. Chavez, 281 F.3d 479, 483-84 (5th Cir. 2002).

The record reflects that the encounter outside Fernandes' apartment, where he made incriminating statements and produced his bong, was consensual. The Detectives knocked on Fernandes' door and asked if they could speak with him outside. No force or show of authority was made to gain Fernandes' compliance. The Detectives did not display their firearms and were not in uniform—which might signal a less-than-consensual encounter. In fact, at the suppression hearing, Detective Walker testified that the encounter was "one of the more casual and cooperative encounters that I have experienced". Moreover, during this initial questioning, Fernandes was not physically or verbally restrained. On this point, however, Fernandes asserts that the fact that Detective Walker put his arm around Fernandes' shoulders when walking down

the apartment stairs shows that Fernandes was in custody. The context of the encounter, however, indicates that any physical contact did not constitute a show of authority or physical restraint.

The district court's finding that Fernandes was engaging in a calculated "wait-and-see" approach—hoping his limited compliance would cause the Detectives to leave, so that his more serious illegal conduct would not be discovered—is supported by the record. These objective facts are confirmed by the fact that, at the suppression hearing, Fernandes admitted he voluntarily agreed to speak with the Detectives and answer questions.

Therefore, the finding that the encounter was consensual is not clearly erroneous. (In his reply brief, Fernandes, who is from India, contends that his rights under the Vienna Convention on Consular Relations were violated, and that such violation should militate against finding the encounter to be consensual. Because this contention was not raised in his opening brief, Fernandes has waived it. E.g., United States v. Pompa, 434 F.3d 800, 806 n.4 (5th Cir. 2005).)

B.

Accordingly, next at issue is the district court's concluding Fernandes' statements to the Detectives—i.e., the confession regarding possession of marijuana and bongs—were voluntary. "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." United States v. Garcia Abrego, 141 F.3d 142, 170 (5th Cir. 1998) (citing Self v. Collins, 973 F.2d 1198, 1205 (5th Cir. 1992)). The district court's ultimate voluntariness determination is reviewed de novo; as noted, the underlying factual findings, only for clear error. Id.

The Government may satisfy its burden of proving voluntariness if it demonstrates that, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice". United States v. Broussard, 80 F.3d 1025, 1033 (5th Cir. 1996). The focus of our voluntariness inquiry must be on the Detectives' actions; indeed, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment". Colorado v. Connelly, 479 U.S. 157, 167 (1986). Moreover, that coercive conduct must cause the confession. Id. at 164.

Fernandes contends the Detectives extracted his incriminatory statements by making promises that the incident would be "over with" if he produced his bong. It is true that certain direct or implied promises of leniency may be "so attractive they render a resulting confession involuntary" if the promise is not kept. Streetman v. Lynaugh, 812 F.2d 950, 957 (5th Cir. 1987). In Bram v. United States, the Supreme Court held that, for a confession to be voluntary, it may not be "extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight". 168 U.S. 532, 542-43 (1897) (emphasis added).

The Court, however, has retreated from a strict application of this position, holding that Bram does not state the standard for voluntariness. Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991). Instead, voluntariness must be determined based on the totality of the circumstances. Id. In that regard, the existence of a promise constitutes but one factor in that determination and does not render a confession involuntary per se. Hawkins v. Lynaugh, 844 F.2d 1132, 1140 (5th Cir. 1988).

The district court did not clearly err in finding the record does not reflect that the Detectives made any explicit promises of leniency to Fernandes. The only statement approaching a promise of leniency was Detective Walker's

8

following statement: "And if I can respond to this complaint and say I've spoken with Jason, and he gave me the bong, and I went away, then we're over with it, okay". As found by the district court, this statement, however, was likely true when made. Had the only incriminating evidence uncovered been the bong, the Detectives could have terminated the consensual encounter without any arrest or citation. Along that line, Detective Walker testified that, had Fernandes consented to a search of his apartment and only a small amount of marijuana had been discovered, he would have called his supervisor and recommended no arrest be made.

Regardless, this statement was "at most an implication of leniency, and indirect promises do not have the potency of direct promises". Id. (citation and internal quotation marks omitted). This statement did not, when viewed in context of the entire encounter, render Fernandes' statements involuntary. Therefore, the district court correctly concluded this statement was merely a prediction of future events, rather than an explicit promise.

Fernandes maintains, however, that his dyslexia should factor into the voluntariness analysis; he contends this disorder made him perceive the Detectives statements literally, which caused him to understand Detective Walker's statement as an explicit promise of leniency. The district court properly discounted evidence of Fernandes' dyslexia presented in connection with his motion for reconsideration. Although Fernandes testified at the suppression hearing that he was dyslexic, he presented no evidence of his learning disability at that time. Rather, in seeking reconsideration, he attached documents from a website on dyslexia, reports from schools he had attended in India, and letters granting him special accommodation for the SAT and at the University of Texas.

The district court found the documents largely consisted of inadmissible hearsay, were unauthenticated, and were irrelevant to Fernandes'

9

understanding of the Detectives' statements during the "knock-and-talk". The court then concluded that, even taking Fernandes' disability into account, the totality of the circumstances still weighed in favor of finding his statements to be voluntary. For the same reasons, we hold that Feranandes' dyslexia has no impact on our determining that his statements were voluntarily made.

Moreover, the Detectives' misrepresenting their reasons for being at Fernandes' apartment is of no moment. Our court has held that "trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them". United States v. Bell, 367 F.3d 452, 461 (5th Cir. 2004) (citing Soffar v. Cockrell, 300 F.3d 588, 596 (5th Cir. 2002) (en banc)). It is clear that the deception by the Detectives as to their intentions did not impact the voluntariness of Fernandes' statements. While the Detectives did manufacture a complaint by a neighbor as their justification for being at the apartment, Fernandes knew at all times that the Detectives were present at his apartment because they suspected he was in possession of illegal drugs. In sum, the misrepresentations were not sufficiently egregious to overcome Fernandes' will so as to render his confession involuntary.

## C.

Fernandes also contends Detective Walker unlawfully searched his apartment. The district court found that Fernandes either expressly or impliedly consented to the search. In the alternative, the court found the search was justified by exigent circumstances. Fernandes maintains consent was not given voluntarily.

Detective Walker entered the apartment (at a minimum, at the threshold, as discussed supra) when Fernandes suddenly slipped into it to retrieve the drugs. As discussed, when this occurred, Detective Walker asked: "Can I follow you inside just to grab [the marijuana], Jason?" At this point, the facts were

disputed in district court. As discussed supra, Detective Walker testified that Fernandes responded to his question by mumbling "yeah". As noted, this portion of the audio recording of the encounter is inaudible, however, and Fernandes disputed Detective Walker's account. The district court noted Fernandes' consent to search vel non "was essentially a 'swearing match' between the Defendant and Detective Walker". The court found Detective Walker's testimony credible, and Fernandes' consent voluntary.

It is well-established that the warrantless "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" and that such searches are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 585-86 (1980). Consensual searches, however, serve as an exception to the warrant requirement so long as the consent is free and voluntary. United States v. Mata, 517 F.3d 279, 290 (5th Cir. 2008). Unlike our review of the district court's ruling on the voluntariness of Fernandes' confession, whether Fernandes voluntarily consented to a warrantless search of his apartment is a question of fact, reviewed only for clear error. Id. at 284. Where, as here, the district court bases its voluntariness finding on oral testimony at a suppression hearing, such fact-findings are particularly strong. Id. at 290.

While recognizing this standard of review, Fernandes nevertheless contends we should apply de novo review, claiming the district court based its factual findings on the audio recording, or the transcript, rather than testimony. Tellingly, Fernandes cites to no authority for this proposition. In civil cases, the clearly erroneous standard applies to findings of fact based on both "oral and other evidence". FED. R. CIV. P. 52(a)(6). Though no comparable rule of criminal procedure exists, we can think of no reason why the same should not hold true.

Consent-to-search voluntariness is determined by a six-factor, totality-of-the-circumstances analysis. Mata, 517 F.3d at 290. The factors are:

(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

Id. The district court made findings with respect to each of these factors and concluded that they weighed, in balance, in favor of the consent to search being given voluntarily.

First, the district court found Fernandes was not in custody when consent was given. Second, it found no coercive tactics were used; rather, the Detectives "talked to the defendant without restraints, at his own residence, in an area open to public view". Third, the court found Fernandes cooperated by coming outside to talk to the police, apologizing for smoking marijuana, and giving the police several bongs. Fourth, the court discredited Fernandes' statement at the suppression hearing that he did not know he could refuse consent because he requested an attorney and refused to cooperate as soon as he knew he "could be in trouble today" and before he was read his Miranda rights. Fifth, the court found Fernandes to be a "highly-educated and intelligent individual", who understood the Detectives' instructions not to enter the apartment. Sixth, and finally, the court found Fernandes gave the Detectives his bong and marijuana in the mistaken belief that such cooperation would prevent the discovery of his larger drug-trafficking operation.

The district court applied the proper legal standard in determining voluntariness. Its factual findings with respect to that standard are, on balance, supported by the record, and, accordingly, are not clearly erroneous. (Because we affirm the district court's finding that consent to search was given

12

voluntarily, we need not address the district court's alternative holding that exigent circumstances justified the search.)

### III.

For the foregoing reasons, the judgment is AFFIRMED.