# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 24, 2011

No. 10-10049

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

TEDDY GATAMBA,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:09-cr-102-2

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Teddy Gatamba appeals his jury convictions and sentence for conspiracy to defraud the Government, in violation of 18 U.S.C. § 286; wire fraud, in violation of 18 U.S.C. § 1343; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Gatamba challenges the denial of his pre-trial suppression motion and, at sentencing, being assessed a 16-level loss enhancement. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10049

## I.

Very early on 13 May 2009 in a motel parking lot, a police officer approached Gatamba; and, after the Officer asked to speak with him, Gatamba provided false identification information and was detained. While detained, and after Gatamba reaffirmed the false information, the Officer frisked Gatamba for safety purposes, noticed objects in one pocket, and received Gatamba's consent to search his pockets. The Officer discovered identification information that did not match that provided earlier by Gatamba.

The district court denied Gatamba's motion to suppress evidence derived from the search. Gatamba's jury-trial convictions arose out of, *inter alia*, his conspiring to obtain money by filing fraudulent federal tax returns. At sentencing, he was assessed the enhancement for that conduct.

## II.

## A.

In considering a motion-to-suppress ruling, findings of fact are reviewed for clear error; questions of law, *de novo*. *E.g.*, *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007). The evidence is viewed "in the light most favorable to the prevailing party—in this case the Government—and . . . all inferences [are drawn] in favor of the . . . denial of the motion to suppress". *United States v. Polk*, 118 F.3d 286, 296 (5th Cir. 1997) (citation omitted). The district court's rulings may be affirmed "on any basis established by the record". *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006) (citations omitted).

In contesting the denial of his suppression motion, Gatamba claims: he had no obligation to identify himself to the Officer during the consensual encounter; the Officer did not develop specific, articulable facts sufficient to establish the reasonable suspicion of illegal activity necessary to validate Gatamba's subsequent detention; and the Officer lacked an objective justification (probable cause for arrest or valid consent) to search him while detained.

No. 10-10049

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) (citation omitted). Courts reviewing rulings on reasonable suspicion *vel non* "must look at the 'totality of the circumstances' . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing". *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). In determining whether an officer acted reasonably under the circumstances, "due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience". *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

From the point Gatamba provided information in response to the Officer's request to speak with him, the encounter was recorded by a camera mounted on the dashboard of the Officer's vehicle; the video is audible. Also pertinent is Texas Penal Code § 38.02(b), which provides: "A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has: . . . (2) lawfully detained the person . . . ."

The Officer approached Gatamba and requested to speak with him; he elected to do so. In response to the Officer's requesting identification, Gatamba stated, *inter alia*: he did not have any identification documents; his name was John Toma (spelling it T-O-M-A); and, when asked a second time, John Tima (spelling it T-I-M-A).

The Officer submitted that information for a computer search of drivers'-license records for the States in which Gatamba claimed he did reside, or had resided—Texas and New York. At this point, four and one-half minutes into the encounter, the Officer asked Gatamba to sit on the curb and asked one of the other officers present to watch Gatamba while the detaining officer attempted to locate persons allegedly accompanying Gatamba. The district court found, and noted the parties agreed, that Gatamba was initially detained at this point.

Shortly thereafter, a female appeared, claiming she was looking for her husband (Gatamba had instead told the Officer he was with his brother's girlfriend), and referred to Gatamba as "Teddy", not "John".  A male appeared with her, claiming he did not know Gatamba; Gatamba had stated, however, that the male was his brother.

Several minutes after that initial detention, Gatamba was informed the computer check had not revealed any drivers' licenses bearing the offered identification information for the States specified by Gatamba.  He then reaffirmed to the Officer, *inter alia*, that his name was John Tima and that he was licensed to drive in New York.

The Officer frisked Gatamba for safety purposes, noticed objects in one pocket, and asked Gatamba for consent to search his pockets.  As Gatamba concedes, he consented. (As discussed *infra*, he maintains here, however: "[T]he taint of the illegal detention was not attenuated by [his] consent . . . because it was not an act of free will".)  Pursuant to that search, the Officer discovered identification cards, credit cards, and other identification information that did not match that earlier provided by Gatamba.

The district court ruled that the Officer's requesting identification was lawful.  It also ruled that the initial detention (four and one-half minutes into the encounter) was lawful because the Officer's suspicions were based on the following specific and articulable facts, *inter alia*: Gatamba was sitting alone in a vehicle in a high-crime area talking on the telephone very early in the morning; appeared nervous; claimed he did not have identification; provided the Officer conflicting names; provided a date of birth that did not comport with Gatamba's appearance; was unable to provide addresses for where he was staying in Texas and for his alleged former residence in New York; stated the persons accompanying him were his brother and his brother's girlfriend, but, when those persons arrived on the scene, they claimed otherwise and the female referred to Gatamba as "Teddy"; and no record was found in Texas or New York,

4

pursuant to a computer check, of names Gatamba provided the Officer. *United States v. Gatamba*, No. 3:09-cr-102-2 (N.D. Tex. 17 Sept. 2009) (motion-to-suppress ruling).

The district court ruled:  when Gatamba, while lawfully detained, again provided false identification information, probable cause arose to arrest Gatamba for violation of Texas Penal Code § 38.02(b); any evidence obtained from the subsequent search was unnecessary to establish such probable cause; Gatamba was under arrest when the Officer asked Gatamba to stand up to be frisked, because no person in Gatamba's position would have believed he was free to leave; and, therefore, the search was valid as a search incident to arrest. Accordingly, the district court found it unnecessary to decide whether Gatamba's consent to the search was voluntary and an independent act of free will. *Id.* The district court did not err in denying the motion to suppress.

### 1.

We agree with Gatamba that he had no obligation to identify himself to the Officer during the first four and one-half minutes of their conversation, which constituted a consensual encounter. But, after Gatamba elected to do so, the Officer lawfully detained Gatamba at the four-and-one-half-minute mark when he asked Gatamba to sit on the curb. This initial detention was lawful because the Officer had particularized facts supporting a finding that *some* criminal activity might be afoot. Contrary to Gatamba's contention, we do not require "the police to articulate particularized facts that support a finding that a *particular specific crime* is afoot". *United States v. Pack*, 612 F.3d 341, 356 (5th Cir. 2010) (emphasis added). Before the Officer asked Gatamba to sit on the curb, Gatamba had been sitting alone in a high-crime area in the very early morning, had provided conflicting names and a date of birth that did not comport with his appearance, and was unable to provide addresses of his claimed Texas and former New York residences.  The initial detention was lawful at its inception and the actions taken by the Officer were reasonably related to the

circumstances that justified the stop. *See, e.g.*, *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc).

**2.**

Arguably, as discussed further below: Gatamba was lawfully detained when he again gave the Officer false identification information; therefore, at that point, Gatamba was, or could have been, arrested for violation of Texas Penal Code § 38.02(b). The Officer testified: had Gatamba denied consent to search his pockets, the Officer would have placed Gatamba under arrest for violation of § 38.02(b) and searched him incident to arrest; after the Officer collected the items from Gatamba's pockets, the Officer determined it was necessary to arrest Gatamba; and, at that point, the Officer considered Gatamba to have been placed under formal arrest. The Officer further testified that, following his consented-to search, because he considered Gatamba under formal arrest, had Gatamba not cooperated, he would have handcuffed Gatamba. (The video shows Gatamba was not handcuffed until approximately 15 minutes after being searched.)

**3.**

In any event, we do not reach the issue of whether there was a lawful arrest before the search, and instead affirm on another basis. As discussed *supra*, the district court's ruling may be affirmed "on any basis established by the record". *Charles*, 469 F.3d at 405. As noted, in district court, the Government urged, *inter alia*, that Gatamba's detention was lawful, and that he voluntarily consented to the search. In district court, Gatamba's attorney admitted: "It appears that Mr. Gatamba gave [the detaining officer] permission to look into his pockets". As discussed, the district court ruled it was not necessary to reach the consent issue.

As noted *supra*, Gatamba contends in our court: "Even if the so-called consent to search the pant pockets by Mr. Gatamba was voluntary, it did not attenuate the taint of the constitutional violation". The Government counters

that, because Gatamba's detention was lawful, Gatamba's contention has no merit.

Pursuant to our review of the record, especially viewing the video, Gatamba consented to the search; his consent was voluntary and an independent act of free will; the consent was not the product of an illegal detention or action; and his consent is a basis for the search's being lawful. *See United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007) (analyzing factors to be considered in determining voluntariness of consent); *United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006) (analyzing factors to be considered in determining whether consent was an independent act of free will).

### B.

For purposes of the advisory Sentencing Guidelines, the district court's loss calculation is a finding of fact. *E.g.*, *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007). Gatamba contends the court erred in assessing the 16-level enhancement based on the financial loss caused by his conduct because: he was involved in the conspiracy only in 2007; the conduct considered by the district court occurred in 2006; and that conduct was neither in furtherance of the jointly undertaken criminal activity nor reasonably foreseeable to Gatamba.

Gatamba did not object in district court, however, to the enhancement; therefore, this contention is reviewed only for plain error. *E.g.*, *United States v. Hernandez-Martinez*, 485 F.3d 270, 272-73 (5th Cir. 2007). To show reversible plain error, Gatamba must show a clear or obvious error that affected his substantial rights. *E.g.*, *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). If he makes that showing, our court has discretion to correct the error, and generally will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

In 2007, Gatamba and his co-conspirator filed approximately 500 fraudulent tax returns for tax year 2006. Gatamba contends: his involvement in the conspiracy was only between 15 and 29 January 2007; and, because the

fraudulent returns involved only tax year 2006, he is not responsible for them. The Government responds that the returns used electronic filing identification numbers linked to the conspiracy.

"[I]t is well established that there can never be plain error if the issue is a factual one, which could have been resolved in district court upon proper objection". *United States v. Rodriguez*, 602 F.3d 346, 361 (5th Cir. 2010) (citations omitted). Accordingly, because Gatamba raises factual issues for the first time on appeal, "it is unlikely those could ever be the basis for reversing forfeited error". *United States v. Castillo*, 386 F.3d 632, 636-37 (5th Cir. 2004) (citations omitted); *see, e.g.*, *United States v. Guerrero*, 5 F.3d 868, 871 (5th Cir. 1993) ("Questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." (citation and internal quotation marks omitted)).

In any event, the district court found the conduct justifying the enhancement occurred in 2007, not in 2006, because that is when the returns were filed; was in furtherance of the criminal activity; and was reasonably foreseeable to Gatamba. Based on our review of the record, those findings were neither clear nor obvious error.

### III.

For the foregoing reasons, the judgment is AFFIRMED.