MAXWELL, J.,
for the Court:
¶ 1. Jimmy Hutto walked into the Bank of Jones County, showed an employee a gun in his pocket, and demanded money. After receiving $1,040 in cash, Hutto drove away. He now appeals the resulting armed-robbery conviction and five-year prison sentence.
¶ 2. His appellate counsel submitted a “Lindsey brief’[1] — a brief in which counsel, after detailing the facts and procedural history, certified he had diligently scoured the record but could find no arguable issues for appeal. We too have thoroughly reviewed the record, focusing on three po *805 tential issues — (1) the initial police report that the robber had a different skin color than Hutto, (2) the warrantless “protective sweep” of Hutto’s house, in which the gun was recovered, and (3) the denial of Hut-to’s proposed insanity-defense jury instruction. Satisfied no error occurred, we affirm Hutto’s conviction and sentence.
Background
¶ 3. While Bank of Jones County employee Laura Rigdon was preparing for the end-of-day closing, a man in a navy hooded jacket and a white painter’s mask approached her desk. He demanded $20,000 and showed Rigdon a gun in his pocket. Rigdon took the man to the teller’s window. The teller removed the bills from the top rack of her drawer — $1040 in various denominations — and handed them to the masked man. The man shoved the money in his pocket and left the bank.
¶ 4. The bank immediately notified the Ellisville police about the robbery. The initial police bulletin alerted officers that a black man had robbed the bank and driven away in a blue sedan. But when officers arrived at the bank, Rigdon told the officers that she recognized the robber’s voice as Jimmy Hutto’s, one of the bank’s customers, who is white. She said she saw Hutto drive away in a blue Ford Taurus.
¶ 5. Rigdon pulled Hutto’s address off the bank’s computerized records. Officer Robert Russell headed straight to Hutto’s house and was met by Officer Wayne McLemore. Parked in the driveway was a blue Mercury Sable — the same car as the Ford Taurus, sold under the Mercury brand. Hutto was at home and told the officers he had not gone anywhere that day. But the muffler of his car was warm from being recently driven.
¶ 6. Officer Russell told Hutto that he was going to do a quick safety sweep of the house to make sure no one else was there. Inside, Officer Russell saw a Colt .45 lying in plain sight on top of Hutto’s dresser. Officer Russell unloaded the gun and placed it in his pocket. Back outside, Hutto’s neighbor, who was related to Hut-to, came over to see why the police were there. Officer Russell asked the relative to lock up Hutto’s house until the search warrant arrived. Officer McLemore took Hutto into custody and drove him to the police station. While being booked, Hutto was asked to empty his pockets. He emptied all his pockets but one. And when asked about this last pocket, he reluctantly removed $1040 in various bills, plus a few coins. Police investigator Christy Carona executed the search warrant on Hutto’s house. She found shoved in Hutto’s trash can, under a newspaper, a navy hooded jacket and a white painter’s mask.
¶ 7. Hutto was indicted for armed robbery, in violation of Mississippi Code Annotated section 97-3-79 (Rev.2006).
¶ 8. Hutto’s trial counsel requested a psychiatric evaluation. The psychologist who evaluated Hutto rejected as “exaggerated, if not fabricated” Hutto’s explanation that the interactions of the various medications he was taking caused him not to remember what happened at the bank. Hutto had no problem remembering driving to the bank or being questioned by police immediately after. In the psychologist’s opinion, not only was Hutto competent to stand trial, but also, at the time of the robbery, Hutto was mentally well and able to distinguish right from wrong.
¶ 9. Hutto’s trial counsel never notified the State or the court that Hutto would offer the defense of insanity. See URCCC 9.07 (requiring written notice if the defense of insanity is to be offered). But at trial, Hutto took the stand in his own defense. He testified about the various medications he was taking and tried to present hearsay testimony that his doctor *806 told him that the drugs may negatively interact. Hutto testified he did not remember the day of the bank robbery. Based on his testimony, Hutto’s counsel argued Hutto was entitled to a jury instruction on insanity as a defense. The trial judge rejected the instruction because Hutto never gave notice of an insanity defense and also failed to present expert testimony that Hutto was legally insane at the time of the robbery.
¶ 10. The jury was instructed that to find Hutto guilty of armed robbery, it had to find that Hutto willfully, unlawfully, and feloniously took the personal property (money) of the Bank of Jones County from Rigdon against her will, by violence to her or by putting her in fear of immediate personal injury by exhibiting a handgun, which is a deadly weapon. The jury found Hutto guilty. Armed robbery carries a penalty of no less than three years and up to life in prison. Miss.Code Ann. § 97-3-79. The trial judge sentenced Hutto to five years in the custody of the Mississippi Department of Corrections. Hutto timely appealed.
Discussion
I. “Lindsey Brief’ Procedure
¶ 11. Hutto’s counsel has determined there are no appealable issues based on the record.[2] The Mississippi Supreme Court has laid out a five-step procedure for this situation:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4),(7)[.]
(2) As a part of the brief filed in compliance with Rule 28, counsel must eertify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining:
(a) the reason for the arrest and the circumstances surrounding arrest;
(b) any possible violations of the client’s right to counsel;
(c) the entire trial transcript;
(d) all rulings of the trial court;
(e) possible prosecutorial misconduct;
(f) all jury instructions;
(g) all exhibits, whether admitted into evidence or not; and
(h) possible misapplication of the law in sentencing.
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.
Lindsey v. State, 939 So.2d 743, 748 (¶ 18) (Miss.2005) (footnotes and internal citations omitted).
*807 ¶ 12. Hutto’s appellate counsel filed a brief with a detailed procedural and factual history and citations to the record. And counsel certified that he reached his conclusion that there are no arguable issues on appeal after scouring the record and specifically examining relevant issues. Counsel also confirmed that he had sent a copy of the brief to Hutto and informed Hutto of his right to file a pro se brief.
¶ 13. Hutto did not file a pro se brief. And we do not find the circumstances warrant supplemental briefing on any issue. Thus, all that remains is our consideration of Hutto’s appeal on the merits.
II. Potential Issues
¶ 14. Based on an independent review of the record, we found three potential issues. Having investigated these issues further, we agree with Hutto’s counsel that there was no argument that a reversible error occurred.

A. Identiftcation of the Robber

¶ 15. Our first concern was with the fact police were initially told the suspect was black, while Hutto is white. But after reviewing all the evidence, we find the evidence supports the jury finding beyond a reasonable doubt that Hutto was the masked man who robbed the bank. Two of the Ellisville police officers admitted on cross-examination that the initial report on the police radio was that the Bank of Jones County had just been robbed by a black male. But they explained that when they arrived at the bank to interview the eye witnesses, Rigdon identified the suspect as Jimmy Hutto, a white male. Pursing this lead led to the discovery in Hutto’s trash of the navy hooded jacket and mask worn by the suspect in the security footage. It also led to the discovery of the exact amount of bills stolen in Hutto’s pocket. Further, the jury watched Hutto’s videotaped interview with the police, in which Hutto admitted he had gone to the bank that day with a gun. Thus, the jury had sufficient evidence to relieve any reasonable doubt that Hutto, based on his skin color, could not have been the bank robber.

B. Protective Sweep of Hutto’s House

¶ 16. Our second concern was that the Colt .45 pistol, introduced into evidence as the gun Hutto used to commit the armed robbery, was seized in a search of Hutto’s house conducted before the search warrant was issued. But our review of the record shows that Officer Russell’s protective sweep of Hutto’s house and seizure of the loaded gun lying in plain sight was reasonable and, thus, permissible under the Fourth Amendment. See U.S. Const, amend. IV; Miss. Const, art. 3, § 23 (protecting people’s houses and effects against “unreasonable searches and seizures”).
¶ 17. “Warrantless searches are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions.” United States v. Charles, 469 F.3d 402, 405 (5th Cir.2006) (quotations and citations omitted). One established exception permits police to “conduct a protective sweep of the area around an arrest scene[.]” Id. This protective sweep “may be no more than a cursory inspection of those spaces where a person may be found and may last no longer than is necessary to dispel the reasonable suspicion of danger nor longer than the police are justified in remaining on the premises.” Id. (quotations omitted); see also Maryland v. Buie, 494 U.S. 325, 335-36, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).
¶ 18. We find Officer Russell’s protective sweep of Hutto’s house falls within the protective-sweep exception. When Officers Russell and McLemore ar *808 rived at Hutto’s house to arrest him,[3] Officer Russell made a cursory inspection inside to make sure no one else was in the home. He only looked in areas where a person could be hiding. And he did not stay in the house longer than necessary but instead went back outside and waited for a search warrant before a more thorough search was conducted.
¶ 19. Hutto made no objection to the admission of the pistol seized during the protective sweep, and we find no issue with the pistol’s admissibility. The pistol was in plain view. And “[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.” Godbold v. State, 731 So.2d 1184, 1190 (¶ 24) (Miss.1999) (quoting Hams v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)).
¶ 20. Because the pistol’s seizure did not violate Hutto’s Fourth Amendment rights, we find no error in the admission of the pistol at trial. But see Marshall v. State, 584 So.2d 437, 438 (Miss.1991) (holding that “tangible materials seized during an unlawful search” are inadmissible “fruit of the poisonous tree” (quoting Murray v. United States, 487 U.S. 533, 536, 108 S.Ct. 2529,101 L.Ed.2d 472 (1988))).

C. Refusal of Insanity-Defense Jury Instruction

¶ 21. Our final concern was with the denial of Hutto’s proposed jury instruction on the defense of insanity.
¶22. Hutto requested the jury be instructed: “If after considering all of the evidence in this case you find the State has failed to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the armed robbery, then your verdict must be not guilty by reason of insanity.” But Hutto never gave the State the required written notice that he intended to offer the defense of insanity, which would have alerted the State that it needed to prove Hutto’s legal sanity at the time of the armed robbery. See URCCC 9.07.
¶ 23. Further, “[a] trial court may withhold an insanity instruction ‘if it concludes that the relationship between a defendant’s mental illness history and his criminal conduct has not been explained or examined in any meaningful way.’ ” Hearn v. State, 3 So.3d 722, 739 (¶51) (Miss.2008) (quoting United States v. Eff, 524 F.3d 712, 717 (5th Cir.2008)). In Hearn, the defendant actually gave pretrial notice of an insanity defense but did not pursue insanity as a defense at trial. Id. at (¶ 50). The Mississippi Supreme Court held the trial court properly denied the proposed insanity-defense instruction “because the evidence was insufficient to create a reasonable doubt of sanity.” Id. at (¶ 51). Here, Hutto not only failed to give notice of an insanity defense, but he also failed to present evidence to create a reasonable doubt of his sanity. Like the *809 defendant in Hearn, Hutto did not pursue an insanity defense at trial and called no expert to testify that at the time of the robbery Hutto was incapable of distinguishing right from wrong. See Hogan v. State, 89 So.3d 36, 39 (¶ 10) (Miss.Ct.App.2011) (“To determine insanity, Mississippi follows the M’Naghten Rule, which essentially asks whether the defendant was unable to distinguish right from wrong at the time of the act.” (citations omitted)). During his own testimony, Hutto merely insisted he could not remember the day of the robbery. As in Hearn, we find the trial court properly refused Hutto’s insanity-defense instruction.
¶ 24. We affirm.
¶ 25. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. See Lindsey v. State, 939 So.2d 743, 748 (¶ 18) (Miss.2005).

. Hutto has different counsel on appeal than at trial. Under Mississippi Rule of Appellate Procedure 22(b), any issue that "may be raised in post-conviction proceedings"' — such as trial counsel’s effectiveness — must be raised on direct appeal when (1) the defendant has different counsel on appeal and (2) the issue is "based on facts fully apparent from the record.” We simply note that there are no post-conviction-relief issues that are fully apparent from the trial record that were waived by not being raised in appellate counsel’s brief.

. Officers Russell and McLemore had probable cause to make a warrantless arrest of Hutto, based on Rigdon’s identification of Hutto as the robber and the fact Hutto's car— which showed signs of being recently driven-matched the description of the getaway car. See Craig v. State, 739 So.2d 410, 412 (¶ 4) (Miss.Ct.App.1999) ("In order to make a felony arrest without a warrant, the officer must have probable cause to believe that (1) a felony has been committed and (2) the suspect to be arrested committed the felony."); see also Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ("Probable cause exists where the facts and circumstances within ... the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (quotations omitted)).