United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 18, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 04–50138
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT NATHANIEL WALDROP,

Defendant - Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

Before JONES, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Based on information from a confidential informant, law enforcement officers requested and obtained a warrant to search Robert Nathaniel Waldrop's residence and vehicles for certain oil field tools and equipment that had been stolen in area burglaries. When they executed the warrant on July 19, 2003, the officers seized oil field tools, as well as two rifles and a shotgun. Waldrop was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Waldrop filed a motion to suppress all evidence of the firearms obtained at the time of his arrest and all of his post-search statements. Waldrop argued that the evidence was obtained in violation of the Fourth, Fifth, and Sixth Amendments to the United States Constitution because law

1

enforcement officers failed to "knock and announce" prior to entering his residence and because the search that yielded the firearms exceeded the scope of the warrant. The district court denied Waldrop's motion based on evidence presented at a suppression hearing.

Waldrop subsequently pled guilty, reserving the right to challenge all issues ensuing from his previously denied motion to suppress. The district court sentenced Waldrop to 41 months of imprisonment and to three years of supervised release. The district court also ordered Waldrop to pay a $100 special assessment. Waldrop filed a timely notice of appeal.

**DISCUSSION**

Waldrop contends on appeal that the district court erred in denying his motion to suppress the evidence and statements obtained as a result of the search of his residence, because the seizure was not justified under the plain view doctrine. In reviewing the denial of a motion to suppress evidence seized during a search, the district court's findings of fact are reviewed for clear error, viewing the evidence in the light most favorable to the government. *See United States v. Cantu*, 230 F.3d 148, 150 (5th Cir. 2000). The district court's legal conclusions are reviewed *de novo*. *Id.* A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid. *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999) (en banc). This Court may affirm the district court's ruling on a motion to suppress based on any rationale supported by the record. *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999).

2

"The Fourth Amendment declares the right to be secure[] against unreasonable searches." *Creamer v. Porter*, 754 F.2d 1311, 1318 (5th Cir. 1985).[1] As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns. *Id.* "An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine." *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977).

The plain view doctrine will justify such a seizure if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items. *Horton v. California*, 496 U.S. 128, 136–37 (1990). In the instant appeal, the district court held that the seizure of the firearms was permissible pursuant to the plain view doctrine. Waldrop's appeal is limited to challenging whether the Government sufficiently established that the firearms were actually in plain view and that the incriminating nature of the firearms was immediately apparent.

Protective Sweep

Waldrop argues that there was no evidence establishing where the rifles were found and thus, the Government failed to establish that the two rifles were in plain view. Waldrop does not challenge the fact that the shotgun was found in plain view.

---

[1] Although Waldrop filed his motion to suppress pursuant to the Fourth, Fifth, and Sixth Amendments, the district court denied that motion based upon the Fourth Amendment. Because Waldrop's arguments on appeal are also limited to the Fourth Amendment issues, any claims Waldrop may have had under the Fifth and Sixth Amendments are waived. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (issues not briefed on appeal are waived).

3

A seizure may be justified if the seized items were discovered during the course of a protective sweep while officers looked in places where an individual might be hiding. *See United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998). "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337 (1990); *see also United States v. Gould*, 364 F.3d 578, 593 (5th Cir. 2004) (en banc) (holding that a protective sweep, as authorized by *Buie*, need not always be incident to an arrest). The seizure of obviously incriminating evidence found during a protective sweep is constitutionally permissible pursuant to the plain view doctrine. *See Munoz*, 150 F.3d at 411.

At the suppression hearing, Sheriff Randy Cozart testified that Waldrop was a member of the Aryan Brotherhood, which was "known to be violent [and] dangerous[,] and [to] engage in criminal acts including thefts, burglaries, robberies, and [trafficking in] narcotics." According to the confidential informant, Waldrop and his roommate intended to shoot any police officers who approached their house for the purpose of executing a search or arrest warrant. Cozart also stated that, prior to 2001, he became aware that Waldrop had the shotgun and that, several weeks prior to the search, the confidential informant informed Cozart that Waldrop was in possession of the two rifles. Cozart testified that, upon execution of the search warrant, a SWAT team performed a sweep of the house and retrieved the two rifles from somewhere within the house. Texas Ranger Don Williams testified that he was with the SWAT team when they searched the house and that, although he did not personally find the two rifles, he "believe[d] those rifles were found in a cursory search of

4

the house to secure the house and to make the house safe. I do know they came from in the house."
After the search, Waldrop was arrested for burglary and possession of stolen property.

The evidence offered by Cozart and Williams at the suppression hearing did not specifically establish where the two rifles were found. However, it did establish that the rifles were found in Waldrop's home during a cursory search of the house to secure the house and make the house safe. Based on that testimony, the district court found that the two rifles were in plain view. Waldrop has not shown that the district court's finding is clearly erroneous.

As noted above, there was testimony at the suppression hearing that Waldrop was a member of the violent Aryan Brotherhood, he possessed firearms, and he and his roommate were planning to kill any police officers who tried to execute a search or arrest warrant. Williams testified that there were people in the living room of the house when the warrant was executed. Because Waldrop had a potentially dangerous roommate and was part of the Aryan Brotherhood, law enforcement officers had a valid basis for believing that other dangerous individuals could have been in the house. These specific and articulable facts warranted a protective sweep of Waldrop's house, and Williams testified that the two rifles were found during this protective sweep. Viewing the evidence in the light most favorable to the Government, the seizure of the two rifles during the protective sweep was thus permissible under the plain view doctrine. *See Munoz*, 150 F.3d at 411.

Collective Knowledge

Waldrop argues that the warrantless seizure of his weapons violated his Fourth Amendment rights and was not justified under the plain view doctrine because the incriminating nature of the weapons was not readily apparent to law enforcement officers who had no prior knowledge of his status as a convicted felon. "The incriminating nature of an item is 'immediately apparent' if the

5

officers have 'probable cause' to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1996) (citation omitted).

At the suppression hearing, Cozart testified that, in 1999, he had looked up Waldrop's criminal history, which showed that Waldrop had been convicted of a state felony and had been released in 1988. Although he was aware that Waldrop had a shotgun at that time, he was told by the district attorney that, according to state law, a felon could possess a firearm if he had been out of prison for more than five years. Cozart therefore believed that Waldrop's possession of the shotgun was lawful. He did not learn until after they executed the search warrant that (1) Waldrop's possession of a firearm was unlawful under § 922(g); and (2) Waldrop's criminal history was erroneous because he was actually released in 1999. Williams's testimony indicated that he was also unaware that Waldrop's possession of a firearm was unlawful under § 922(g) until after the search warrant was executed.

Waldrop argues that, because the police officers were unaware of his true criminal history and of the applicability of § 922(g) at the time the firearms were seized, there was no probable cause for the police officers to believe that his three firearms were incriminating. In other contexts, this Court has held that the probable cause determinations may be based upon the collective knowledge of the police officers at the scene, as long as there is some general communication between the officers. *See United States v. Kye Soo Lee*, 962 F.2d 430, 435–36 (5th Cir. 1992) (probable cause to make an arrest); *United States v. Cooper*, 949 F.2d 737, 745 (5th Cir. 1991) (probable cause to conduct a warrantless search). This Court has also relied upon the collective knowledge doctrine when assessing whether reasonable suspicion (a lower standard than probable cause) existed. *See United*

6

*States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000) (reasonable suspicion for continued detention); *United States v. Coleman*, 969 F.2d 126, 129 (5th Cir. 1992) (reasonable suspicion for vehicle stop). Although this Court has not applied the collective knowledge doctrine in the specific context of a seizure justified by the plain view doctrine, the Courts of Appeals for other circuits have done so. *See United States v. Terry*, No. 04-2595, 2005 U.S. App. LEXIS 3733, at *9–11 (8th Cir. Mar. 7, 2005)*; United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996); *United States v. Menon*, 24 F.3d 550, 562–63 (3d Cir. 1994).

Williams testified that shortly after the police executed the search warrant, he spoke with Detective Mitch Russell inside Waldrop's house, and Russell informed him that federal law prohibited Waldrop from possessing firearms. Because Russell was present on the scene and there was communication between the officers, application of the collective knowledge doctrine supports the finding that the officers had probable cause to believe that the firearms were incriminating. *See Buchanan*, 70 F.3d at 826; *Cooper*, 949 F.2d at 745.

## CONCLUSION

Based on the wealth of persuasive authority from our sister circuits, as well as analogous cases from this Court, we hold that the collective knowledge doctrine applies. Accordingly, the district court's denial of Waldrop's motion to suppress is AFFIRMED.