# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60804

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAMES ALLEN MYERS,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

November 18, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CR-93-1

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

James Allen Myers was convicted by a jury on seven counts of transportation and possession of child pornography and sentenced to 360 months in prison. In this appeal, he challenges three aspects of his trial. First and most significantly, he asserts the district court should have excluded all of the Government's child pornography evidence because the search and seizure that led to its discovery was unconstitutional. Second, he contends that the district court should have granted his motion for a mistrial following the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60804

improper testimony of a government agent.  Finally, he argues that the evidence was insufficient to support his child pornography convictions.  All of these challenges fail and we AFFIRM his conviction and sentence in full.

**BACKGROUND**

In fall 2013, agents of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") were conducting an investigation into an internet site known as a haven for child pornography.  During their investigation, agents discovered that an IP address registered to James Allen Myers at an apartment in North Port, Florida had uploaded images of child pornography onto that site.  In late August, these Florida-based HSI agents executed a federal search warrant at the North Port apartment.  Though they came up empty-handed, they learned that Myers had recently moved to Carriere, Mississippi.  Intriguingly, they also learned that Myers may have removed the hard drive from a computer in the North Port apartment and taken it with him to Carriere.

The Florida-based agents contacted HSI Special Agent Danyelle Evans in Mississippi and requested her help in locating Myers and the missing hard drive.  The Florida-based agents did not have a good address for Myers, just a description of him and his truck and a rough location in Carriere where he might be living.  Using this information, Evans and her small team were able to locate Myers.

They found Myers sitting on the front porch of the house where he rented a room.  The agents identified themselves and told Myers they were there as part of a child pornography investigation.  They next told Myers that a search warrant had been executed at the Florida apartment that morning and they knew a hard drive had been removed from a computer there and brought to Carriere.  Evans then asked Myers point blank if he had that hard drive and

2

No. 14-60804

Myers responded that he did. Evans asked if Myers would show her where it was and Myers stood up, gestured, and led her to his room.

Once in his room, Myers pointed to a pair of hard drives sitting in an open closet. Evans and another agent entered the room and examined the hard drives that Myers had pointed out. In the middle of this, Evans took time to look around Myers's room. She saw things similar to incriminating items she had located during other child pornography investigations. For instance, she saw a number of VHS tapes, including one labeled "A Little Princess." She also saw CDs and DVDs with handwritten titles stacked on top of a computer. She saw a spiral notebook that appeared to be a ledger, possibly recording and organizing a collection of child pornography.

Evans and the other agents moved the hard drives onto the bed. They also began to move some of the other things onto the bed. At this point, Myers asked them again about the subject of their investigation. The agents reiterated that it was a child pornography investigation and also told Myers they would need to seize all the suspicious items in his room. Apparently this cast their visit in a new light because Myers asked one of the agents if they needed a search warrant. The agent replied that they did not because he had consented to their being in the bedroom. At that point, Myers told the agents he was revoking their consent to be there.

The agents left the room and, along with Myers, waited outside of the house. They left the hard drives and other suspicious items in the room. The HSI agents asked a local sheriff's detective who had been helping them with their investigation to go and apply for a state search warrant. Evans testified at the suppression hearing that they sought the warrant out of an "abundance of caution." After the warrant was signed by a state judge, the sheriff's detective called Evans and told her he had a warrant for Myers's bedroom.

No. 14-60804

Evans and her team reentered the home and seized a number of electronic items, including the hard drives, CDs, DVDs, VHS tapes, and a pair of computers. The seized items were removed from Myers's bedroom and taken to HSI offices. Before the electronic items were searched or otherwise viewed, a separate federal search warrant authorizing that examination was obtained.

Based on the evidence obtained from searching the electronic items, Myers was indicted on one count of transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) and six counts of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

Prior to trial, Myers moved to suppress the evidence obtained from his bedroom on two grounds, only one of which he ultimately pursues on appeal. Myers argued that the search warrant did not describe the things to be seized with particularity. Myers argued further that the warrant was so facially invalid that no reasonable officer would have relied on it and thus the good faith exception did not save the evidence involved.

The district court held a hearing on the motion to suppress. Over the course of two days, two HSI agents (including Evans) and the sheriff's detective testified. Myers offered no witnesses, though his counsel vigorously cross-examined the witnesses who did testify. The district court also heard argument from both the Government and Myers.

The district court denied the motion to suppress based on the following conclusions of law:

- Myers consented to federal agents' being in his room and seizing the hard drives.

- Myers withdrew his consent after federal agents seized the two hard drives.

- The warrant obtained by the sheriff's detective was deficient because it did not particularly describe the items to be seized.

4

- The hard drives were seized in plain view during a valid consent search of Myers's room.

- The remaining items seized were in plain view when the agents were in Myers's room looking for the hard drives.

- The warrant was not so deficient that every reasonable officer would have known it was deficient and thus, alternatively, the good faith exception applies.

Following his conviction, Myers re-urged his suppression arguments under Federal Rules of Criminal Procedure 20 and 33 seeking a judgment of acquittal or new trial. The district court denied both motions in a written order reiterating its rulings. Myers timely appealed to this court.

## DISCUSSION

### I. Fourth Amendment claims.

Myers primarily challenges the district court's refusal to suppress the evidence other than the hard drives seized from his room. He argues that the district court's ruling on the good faith exception was erroneous because the state court warrant's lack of particularity was so blatant that no reasonable officer could have relied on the warrant. Myers's position is doomed because he failed to challenge the district court's alternative grounds for seizure both on appeal and in the district court.

Myers fails to meaningfully brief the district court's consent and plain view rulings in this appeal, as he focuses almost exclusively on the good faith exception. But in addition to relying on the good faith exception, the district court also held that the evidence seized in this case was obtained by a consent search and within the plain view doctrine. These rulings were issued orally at the hearing and in the written post-trial order. Myers marks his disagreement in his opening brief that any evidence was seized by consent, then proceeds exclusively to discuss the good faith issue. In a direct criminal appeal, an

5

appellant waives arguments not adequately briefed. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (collecting cases). By effectively ignoring the consent search and plain view rulings, Myers has waived his objections to them.

Even if he had briefed the district court's consent and plain view rulings on appeal, Myers also did not adequately raise these issues in the district court. His motion argued that that evidence should be suppressed for lack of probable cause underlying the warrant and the warrant's failure to describe the items with particularity. At the suppression hearing, the Government clearly argued both consent and plain view. Myers responded that since the warrant return listed all the items ultimately seized, they must have been seized under the warrant rather than during any consent search or plain view seizure. In any event, Myers continued, plain view is more applicable to drug cases. Myers focused essentially on the invalid warrant and the inapplicability of the good faith doctrine. This court has held that "failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." *Id.* at 448 (emphasis omitted) (quoting *United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2006)). Thus, Myers also waived his objections to the alternative grounds for the district court's ruling.

Myers has waived any appeal on the consent and plain view rulings. But in criminal cases involving waiver, this court has discretion to correct the district court's unobjected-to error if the error is plain and affects substantial rights. *Id.* at 449. "Plain" means the error is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009). Here, assuming for argument's sake that (1) the scope of the consent search only extended to the computer hard drives specified in the federal warrant, and (2) the district court's ruling on plain view was error, it was subject to reasonable debate and thus not "plain."

No. 14-60804

The plain view doctrine allows law enforcement to seize items without a warrant if the officers 1) "lawfully entered the area where the items could be plainly viewed;" 2) "the incriminating nature of the items [to be seized] was immediately apparent;" and 3) "the officers had a lawful right of access to the items." *United States v. Conlan*, 786 F.3d 380, 388 (5th Cir. 2015) (quoting *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)).

In this appeal, the first and third factors are met because Myers consented to federal agents' coming into his room. In fact, Myers did not revoke his consent until federal agents had already started to move some of the items they intended to seize. The district court heard two agents testify about Myers's consent. This testimony was neither undermined by Myers's counsel, nor contradicted by other witnesses. It was at the very least debatable and not plainly erroneous for the district court to conclude that federal agents were lawfully present in his room and had a lawful right of access to the electronic items that were eventually seized.

As to the second factor, it was also not plainly erroneous for the district court to find that the incriminating nature of the items was immediately apparent to these federal agents. An item is immediately apparent as incriminating if "officers have probable cause to believe that the item is either evidence of a crime or contraband." *Id.* (internal quotation marks omitted) (quoting *Waldrop*, 404 F.3d at 369). This probable cause analysis is a common-sense one and "the evidence . . . must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981)).

Federal agents testified during the suppression hearing that they knew Myers was suspected of "uploading images . . . [of] child pornography to an

image sharing web site." Thus, when agents arrived in Myers's bedroom looking for a computer hard drive, they knew it was part of a larger computer-based child pornography investigation. When Myers led them directly to the hard drive, they looked around and saw other computer and electronic hardware, as well CDs, DVDs, and VHS tapes capable of holding computer files, images, or videos. One of these VHS tapes was labeled "A Little Princess," a title easily construed as referring to child pornography. Evans testified that these things were "very similar" to things collected in other child pornography investigations. The district court directly credited Agent Evans's "training and experience" as giving "her reason to believe those materials were of such a nature that they could constitute . . . evidence of [child pornography]." At the very least, it was debatable and not plainly erroneous for the district court to conclude that probable cause existed.

The district court's conclusion on probable cause is supported by *United States v. Conlan*. 786 F.3d at 388. In *Conlan*, law enforcement officers investigating a stalking case were aware that the defendant was sending the victim harassing emails and text messages. *Id.* During a protective sweep of the defendant's hotel room, officers seized his computer and cellular phone. *Id.* The defendant argued that the incriminating nature of these everyday items was not immediately apparent. *Id.* Not true, this court concluded. For officers well-versed in the investigation of stalking crimes, and the facts of this crime in particular, there was probable cause to believe those items constituted evidence of a crime. *Id.*

At oral argument, Myers's counsel raised, for the first time, an interesting issue: is this plain view analysis altered by the timeline in this case, where officers were present in the house with consent and saw incriminating items, but then left the house without seizing the items? However, the district court did not plainly err in its implicit holding that the plain view analysis is

No. 14-60804

not altered by this chronology.  First, such a holding comports with this court's precedent.  *See, e.g. United States v. Mendoza-Burciaga*, 981 F.2d 192, 195 (5th Cir. 1992) *(*where the cocaine was in plain view during a protective sweep, the officers could seize it without a warrant, and thus there was no need to address the further issue whether the warrant they subsequently obtained was defective).

Additionally, the Fourth Amendment's "ultimate touchstone" is reasonableness.  *See Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014).  Here, police had consent and plainly viewed evidence of a crime, then left the house, but remained immediately outside.  Police maintained "dominion and control" over the electronic items because the scene was secure and no one was allowed access to the items while the warrant was obtained.  *See United States v. Jacobsen*, 466 U.S. 109, 120, 104 S. Ct. 1652, 1660 (1984).  The seizure of these items under the plain view doctrine was reasonable.  It was at the very least debatable that the district court's plain view analysis should not have been altered by the timing of the seizure, thus any conceivable error was not plain.

Because Myers waived his objections to the consent search and plain view rulings of the district court and these rulings are not plainly erroneous, the evidence should not have been suppressed.

## II.     Denial of Mistrial.

Myers objects to testimony by Agent Evans that one of the CDs removed from Myers's bedroom contained "images of sexual exploitation of a minor." Myers argues that this description was testimony on an ultimate issue in the trial and thus prohibited.  Because of the prejudicial nature of this testimony, Myers moved for a mistrial.  He now appeals the district court's denial of a mistrial.

This court reviews for an abuse of discretion a district court's denial of a mistrial after improper evidence has been submitted to the jury.  *See United*

9

*States v. Zamora*, 661 F.3d 200, 211 (5th Cir. 2011). This evaluation has two parts: the characteristics of the improper evidence itself and the strength of the other evidence in the case. *Id.* The district court may have abused its discretion only "if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict" when "viewed in light of the entire record." *Id.* (quoting *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998)).

Assuming for argument's sake that Evans's testimony was improper, the district court did not abuse its discretion in failing to order a mistrial. The testimony was a six-word description that introduced no new information to the case—in a child pornography trial, surely the jury was expecting to hear that the government (and its witnesses) believed the defendant possessed child pornography. Further, the district court immediately instructed the jury to disregard and not consider the offending testimony. The court twice asked the jury if they understood the instruction and received no indication they did not. It is axiomatic that juries are presumed to follow the court's instructions. *See Zafiro v. United States*, 506 U.S. 534, 540, 113 S. Ct. 933, 939 (1993).

Most significantly, the jury did not have to take Evans's word about what was on the CD: within minutes of her fleeting use of law enforcement jargon, jurors were viscerally exposed to five videos and eleven images from the CD. When the Government asked Evans to describe one of the pictures, Myers made a sustained objection, stating "[T]he picture speaks for itself." This court agrees. Combined with other strong evidence of Myers's guilt, there is no significant possibility that this testimony had a substantial impact on the jury and the district court did not err by denying a mistrial.

### III.   Sufficiency of the Evidence.

Myers's contends that the Government presented no evidence that he "knowingly" transported or possessed child pornography. Myers argues a lack

of crucial evidence that Myers accessed the images themselves; the government only proved that Myers knowingly possessed the devices where the images were stored.  Myers asserts that he could be in possession of the devices, but not knowingly in possession of the images if the computers were not password protected or if the internet connection Myers accessed in Florida was used by various other people.

When properly preserved, this court reviews a sufficiency of the evidence challenge de novo.  *United States v. Woerner*, 709 F.3d 527, 535 (5th Cir. 2013).  This review examines whether a rational jury "could have found that the evidence established the essential elements of the offense beyond a reasonable doubt."  *Id.*  This court views the evidence "in the light most favorable" to the jury's verdict and draws "all reasonable inferences from the evidence to support the verdict."  *Id.*  In this case, the only question is whether there was sufficient evidence to allow the jury to infer guilty knowledge beyond a reasonable doubt.  Unquestionably, there was:

- Myers was the account holder of the IP address that uploaded images of child pornography onto the internet.

- Myers's email address was tied to postings on the website where the IP address had uploaded child pornography.

- Among the images found on the CDs in Myers's room were pornographic pictures of children he previously babysat in Florida.

- Child pornography was found on a number of different forms in Myers's room in Mississippi, including on CD, on a hard drive, and on a computer.

- More than 20,000 images of nude or partially nude children were found in Myers's possession in Mississippi.

11

No. 14-60804

Myers's alternative explanations for how his computer or hard drive might have come to contain child pornography do him no good on appeal. These theories were presented at trial and rejected by the jury when they returned a guilty verdict on all counts. There is sufficient evidence to support their decision to weigh the competing theories and "credit the prosecution's case." *Id.* (quoting *United States v. Winkler*, 639 F.3d 692, 700 (5th Cir. 2011)).

## CONCLUSION

For the above reasons, all of Myers's challenges to his conviction fail. He raises no challenges to his sentence. His conviction and sentence are therefore **AFFIRMED**.