**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JAH'VAR LOOBY, Defendant**

Case No. ST-2016-CR-0000141

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 22, 2016

85

NATASHA BAKER, ESQ., Virgin Islands Department of Justice, St. Thomas, USVI.

JULIE TODMAN, ESQ., Office of the Territorial Public Defender, St. Thomas, USVI.

FRANCOIS, *Judge*

## MEMORANDUM OPINION

### (August 22, 2016)

Before the Court is the People's Motion for Reconsideration of the Court's July 27, 2016 Order Granting Defendant's Motion to Suppress.[1] The Order prohibited the People from introducing during trial a firearm found on Defendant's person or statements he allegedly made in connection with the firearm. The People claim that the Court's Order was made in clear error because it contradicts the collective knowledge doctrine. They assert Officer Jamie Serrano's alleged awareness that Defendant had a firearm should have been imputed to Officer Bruce Taylor, so as to provide Officer Taylor with the requisite knowledge needed to conduct a *Terry* stop and frisk. The Court finds that application of the collective knowledge doctrine is not appropriate in this case and, therefore, Serrano's reasonable suspicion should not have been imputed to Taylor.[2] Therefore, the Court will deny the People's Motion.

## BACKGROUND

Defendant is charged with violating Title 14, § 2253(a) of the Virgin Islands Code [Unauthorized Possession of a Firearm].[3] He was arrested

---

[1] The Motion was filed on August 4, 2016.

[2] Aside from determining whether Serrano's alleged awareness that Defendant had a firearm can be imputed to Taylor, Court stated in its Order that whether Serrano himself had reasonable suspicion needed to conduct a *Terry* search is questionable. *People v. Looby*, Case No. ST-2016-CR-0000141, Order 5 n.28 (July 26, 2016).

[3] Information (filed May 10, 2016).

on April 16, 2016. Some of the facts presented by the parties are in dispute.

On April 16, 2016, at approximately 11:00 pm, Officers Bruce Taylor ("Taylor") and Jamie Serrano ("Serrano") were patrolling an area called Hospital Ground, also known as "Round the Field," in a marked police car.[4] Serrano testified that, according to his several years of experience as a police officer, this area near the Winston Raymo Recreation Center is a high crime area known for murders and gun shots and he did not feel safe there. Taylor and Serrano testified they smelled marijuana as they drove down a street with men on both sides of their vehicle and saw a male next to Defendant smoking a marijuana cigarette. Defendant and the other male were leaning against a wall. After the police officers exited their vehicle to investigate, the male next to Defendant and several others ran away. Serrano stated Defendant "stalled for a second and then he started to walk away."[5] The People assert Serrano then told Defendant not to move and Defendant walked back to the police officers. Taylor chased after a male that ran away while Serrano stayed with Defendant. However, Defendant asserts that after the police officers exited their vehicle, Serrano pointed a gun at him and ordered him not to move.

Defendant and Serrano both testified that Defendant volunteered that he had a marijuana cigarette. Serrano testified that he asked Defendant if he had any weapons and Defendant stated that he did. Conversely, Defendant denies that Serrano asked if he was carrying a weapon or that he told Serrano he had a weapon.

Serrano testified that he did not conduct a pat-down search of Defendant because Serrano was holding his duty-issued rifle at the time. Instead, Serrano then requested assistance from Taylor. Taylor came back and patted down Defendant who was facing the wall. However, Taylor was not present when Defendant allegedly told Serrano that he had a weapon and Taylor testified Serrano did not tell him that Defendant disclosed that he had a weapon. The pat-down search conducted by Taylor revealed that Defendant had a firearm tucked into his waistband. Defendant then allegedly admitted to not having a license to carry a

---

[4] On this night, the Carnival Queen Selection Competition was taking place in Lionel Roberts Stadium. *See* Exhibit B (attached to the People's Opposition to Defendant's Motion to Suppress (filed June 28, 2016)).

[5] Aff. of Officer Bruce Taylor ¶ 3 (filed May 10, 2016).

firearm and was placed under arrest.[6] During the July 5, 2016 hearing, Defendant admitted he was carrying the firearm.

Defendant moved the Court to suppress introduction of the firearm as evidence during trial, arguing it was discovered by Taylor in a manner that violated his Fourth Amendment rights.[7] On July 27, 2016, the Court issued an Order granting Defendant's Motion and Memorandum to Suppress. The People filed the present Motion for Reconsideration on August 4, 2016, arguing that the Court's July 27, 2016 Order was in clear error of the law because it failed to apply the collective knowledge doctrine. Specifically, the People contend that since Defendant allegedly told Serrano that he had a weapon, Serrano had probable cause to search Defendant and, under the collective knowledge doctrine, Serrano's probable cause should be credited to Taylor when determining if Taylor conducted a lawful search.

## MOTION FOR RECONSIDERATION STANDARD

Since no provision of the Virgin Islands Code or rule of this Court authorizes the filing of a motion for reconsideration, a motion for reconsideration is properly filed under Local Rule of Civil Procedure 7.3, made applicable to the Superior Court of the Virgin Islands pursuant to Superior Court Rule 7,[8] A motion under LRCi 7.3 may only be based on "(1) intervening change in controlling law; (2) availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." A motion for reconsideration "is not a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not."[9]

## ANALYSIS

The Fourth Amendment to the U.S. Constitution guarantees security in persons, papers, and effects against unreasonable searches and

---

[6] Taylor's Aff. ¶¶ 5, 6.

[7] Defendant's Motion and Memorandum to Suppress (filed June 8, 2016).

[8] Local Rule of Criminal Procedure 1.2 states that "[i]n cases of general procedure not covered by these Rules, the Local Rules of Civil Procedure shall apply."

[9] *Guardian Ins. Co. v. Estate of Knight-David*, 2015 V.I. LEXIS 124, at **3-4 (V.I. Super. Ct. 2015).

seizures.[10] In *Terry v. Ohio*, the United States Supreme Court held that a police officer may conduct a brief, investigatory stop and conduct a quick pat-down search for weapons without a warrant and on less than probable cause if the officer has a reasonable and articulable suspicion of criminal activity.[11] Such a search is limited by the exigencies of the situation. In order to be valid under *Terry*, a pat-down search must be based on a reasonable belief that a person is armed and presently dangerous.[12]

■ The "collective knowledge doctrine," also called the "imputed knowledge doctrine" and the "fellow officer rule," dictates that a court should consider the collective knowledge of all police officers involved in an investigation when determining if a police officer had the requisite knowledge needed to conduct a search or an arrest. The doctrine was articulated by the U.S. Supreme Court in *Whiteley v. Warden*.[13] The U.S. Supreme Court held "police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite needed to support an independent judicial assessment of probable cause."[14] The collective knowledge doctrine later was expanded and applied to determining whether an officer has the requisite knowledge to conduct a Terry search.[15] Overall, the collective knowledge doctrine allows officers to reasonably rely on the knowledge of other officers when making an arrest or conducting a search.

■ The collective knowledge doctrine generally has been divided into two types of imputed knowledge, "vertical collective knowledge" and "horizontal collective knowledge."[16] Vertical collective knowledge involves an officer receiving instructions to search or arrest someone from another officer who has probable cause or reasonable suspicion. Under the vertical collective knowledge doctrine, an officer with the requisite

---

[10] U.S. CONST. amend. IV. The Fourth Amendment applies to the Virgin Islands pursuant to Section 3 of the Revised Organic Act of 1954.

[11] 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[12] *Ybarra v. Illinois*, 444 U.S. 85, 92-93, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979).

[13] 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971).

[14] *Id.* at 568.

[15] *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985).

[16] *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1228 n.5 (10th Cir. 2008) (distinguishing the different approaches to the collective knowledge doctrine).

knowledge needed to conduct a lawful search may have another officer act in his place. For example, in *United States v. Hensley*, the U.S. Supreme Court held that a police officer could rely on a "wanted flyer" to conduct a *Terry* search even though the officer himself did not have articulable reasonable suspicion.[17] Instead, the validity of the search was predicated on the wanted flyer being issued upon the reasonable suspicion of other police officers.

Horizontal collective knowledge involves a court determining whether the knowledge of investigating officers working together can be imputed from one to another. The horizontal collective knowledge doctrine allows a court to determine the presence of reasonable suspicion or probable cause by aggregating the officers' knowledge, even if no officer by himself can articulate probable cause or reasonable suspicion.[18] The theory behind the horizontal collective knowledge doctrine involves viewing a group of police officers working together as a single operating unit or a team. The U.S. Court of Appeals for the Tenth Circuit stated "officers working closely together during a stop or an arrest can be treated as a single organism."[19] Therefore, the analysis shifts to determining if the unit as a whole had reasonable suspicion or probable cause to conduct a search, instead of an individual officer.

The U.S. Supreme Court has not yet addressed the horizontal knowledge collective doctrine and the federal and state courts are split on whether it comports with *Whiteley v. Warden* and the Fourth Amendment.[20] Among the jurisdictions that adopted the horizontal collective knowledge doctrine, courts are further split on whether

---

[17] 469 U.S. at 232.

[18] *See, e.g., United States v. Cook*, 277 F.3d 82, 86 (1st Cir. 2002) ("common sense suggests that, where law enforcement officers are jointly involved in executing an investigative stop, the knowledge of each officer should be imputed to others jointly involved in executing the stop").

[19] *United States v. Shareef*,100 F.3d 1491, 1504 n.6 (10th Cir. 1996).

[20] *See generally* Brief for the Nat'l Assoc. of Crim. Defense Lawyers and the Nat'l Assoc. for Public Defense as Amicus Curiae, pp. 7-15, *Grassi v. Colorado*, 135 S. Ct. 678, 190 L. Ed. 2d 393 (2014) (cert. denied) (collective cases), *available at* http://www.publicdefenders.us/sites/default/files/Grassi_v_Colorado_amicus_brief.pdf.

unshared knowledge may be imputed if even there was no communication amongst officers.[21]

Contrary to the People's Motion, the contours of the collective knowledge doctrine are not "well-settled" in the Virgin Islands. First, the Virgin Islands Supreme Court has not yet addressed the collective knowledge doctrine.[22] Second, the Superior Court only published one memorandum opinion addressing the collective knowledge doctrine in *People v. Cooke*.[23] Therefore, the Court first must determine whether the *Terry* search involved in this matter falls under the vertical or horizontal collective knowledge doctrine. Then, if the horizontal collective knowledge doctrine applies, the Court must determine if it should adopt this legal principle.

### a. The vertical collective knowledge doctrine is not applicable because Serrano did not instruct Taylor to search Defendant.

 Neither the record nor the testimony provided during the July 5, 2016 hearing reveal that Serrano told Taylor to search the Defendant. Furthermore, the People do not claim in their Motion or in their Opposition to Defendant's Motion to Suppress that Serrano directed Taylor to search the Defendant. While the Court acknowledged that

---

[21] *Compare United States v. Waldrop*, 404 F.3d 365, 370 (5th Cir. 2005) ("probable cause determinations may be based upon the collective knowledge of the police officers at the scene, as long as there is some general communication between the officers"); *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005) ("We impute information if there has been 'some degree of communication' between the officers. This requirement distinguishes officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject") (citations omitted), *with United States v. Butler*, 74 F.3d 916, 921 (9th Cir. 1996) (holding that "collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer can establish probable cause"); *Cook*, 277 F.3d at 86 ("Officers who jointly make such stops rarely will have an opportunity to confer during the course of the stop. Basing the legitimacy of the stop solely on what the officer who first approaches the suspect knows, rather than on the collective knowledge of all of the officers who participate directly in carrying out the stop, thus makes little sense from a practical standpoint").

[22] The People erroneously stated that the "Virgin Islands Supreme Court has spoken directly on this issue." However, the citation they provided, *People v. Crooke*, 2012 V.I. LEXIS 60 (V.I. Super. Ct. 2012), is a Superior Court opinion.

[23] 2012 V.I. LEXIS 60.

"Serrano . . . requested assistance from Taylor,"[24] the record does not indicate that Serrano specifically asked for assistance with searching Defendant, so as to allow the Court to conclude that Taylor relied on Serrano's request to establish reasonable suspicion. Accordingly, the Court determines that the vertical knowledge collective doctrine does not apply to this matter.

### b. This Court declines to adopt the horizontal collective knowledge doctrine.

#### 1. The horizontal collective knowledge doctrine reaches beyond the boundaries of a reasonable search as set by the Fourth Amendment.

In *People v. Crooke*, the Superior Court chose to apply the horizontal collective knowledge doctrine.[25] The case involved a police officer, named Officer Callwood, that chased after a defendant while his fellow officer, named Detective Vincent, stayed behind and searched the area from which the defendant ran. Officer Callwood removed a brown bag filled with marijuana from the defendant's pocket even though he did not have probable cause to search the defendant's pocket after conducting a pat down. However, moments prior or concurrently, Detective Vincent found marijuana in a cellular telephone box on the wall where the defendant was sitting. The Court held that Detective Vincent's discovery of marijuana provided sufficient facts to establish probable cause that criminal activity was afoot. The Court went further and stated that even though Officer Callwood did not know Detective Vincent discovered marijuana at the time he reached into the defendant's pocket, the requisite knowledge to establish probable cause possessed by Detective Vincent could be credited to Officer Callwood because they were working as a team.

█ Justifying its holding, the Superior Court in *People v. Crooke* stated, "[t]he determination of probable cause is fluid and must be assessed by law enforcement officers under the pressure of live action, and, therefore, a reviewing court must use a common sense approach and

---

[24] Order 2 (July 26, 2016).
[25] 2012 V.I. LEXIS 60 (Christian, J.).

take into account the totality of all relevant circumstances."[26] However, it is important to consider that "the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law."[27] Therefore, in contrast with *People v. Crooke*, this Court declines to aggregate uncommunicated information amongst officers because this Court finds this method of establishing reasonable suspicion or probable cause runs contrary to the Fourth Amendment.

Not requiring an officer to have reasonable suspicion or to reasonably rely on an order given by another officer with reasonable suspicion before conducting a *Terry* search could produce unjust results. For example, under the horizontal collective knowledge doctrine, it is possible for an officer to knowingly and purposely conduct a *Terry* search without reasonable suspicion but then have that unlawful search sanitized by another officer's prior or concurrent investigation. This scenario is antithetical to the Fourth Amendment's purpose of deterring unreasonable searches.

### 2. The horizontal collective knowledge doctrine provides no guidance to police officers on avoiding unreasonable searches.

The Court realizes that police departments adopt policies in response to court opinions to deter their officers from violating the Fourth Amendment when conducting an investigation and, consequently, causing evidence to be suppressed. However, this Court finds that adoption of the horizontal collective knowledge doctrine would in no way inform the Government on proper practices and procedures it could implement to ensure officers operate within the confines of the Fourth Amendment. One commenter provides the following enlightening critique:

> The benefits flowing from the new rule [horizontal collective knowledge doctrine] occur by chance and cannot be integrated into a departmental protocol for conducting searches and arrests. The rule does not enhance the portability of probable cause generally, so that police

---

[26] *Id.* at *14.

[27] *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

departments may improve their search and communications procedures; instead, the rule simply treats a particular officer, *ex post*, as having had probable cause when it would otherwise have been lacking. The rule does not help police departments to plan their deployment of personnel, because the rule's very premise is that the acting officer did not know what the others knew, and therefore could not have known in advance whether his action would prove to have been permissible.[28]

Under the vertical collective knowledge doctrine, a police officer can trust that his fellow officers are competent at determining if reasonable suspicion exists and he can use their instructions to guide his decisions.[29] However, with horizontal collective knowledge, an officer neither has reasonable suspicion himself nor is he relying on the belief that a fellow officer has reasonable suspicion. Instead, the horizontal collective knowledge doctrine provides an officer with no direction on what police conduct is acceptable under the Fourth Amendment because it does not rely on his awareness of facts or his reliance on someone else's knowledge. The U.S. Court of Appeals for the Fourth Circuit provides the following explanation for declining to adopt the horizontal collective knowledge doctrine:

> We must frame the question in terms of deterrence, and for the purposes of deterrence we look to each individual officer's decision-making process as she considers executing a search or effecting a seizure. Where officers working closely together have *not communicated* pertinent information, the acting officer weighs the costs and benefits of performing the search in total ignorance of the existence of that information — it is not known to her, so it cannot enter into the calculus. Therefore, for purposes of the exclusionary rule, that additional information must be irrelevant.[30]

---

[28] Simon Stern, *Constructive Knowledge, Probable Cause, and Administrative Decisionmaking*, 82 NOTRE DAME L. REV. 1085, 1111 (2013), available at http://scholarship.law.nd.edu/ndlr/vol82/iss3/4.

[29] *But see United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001) ("the 911 operator's knowledge could not be imputed to the dispatcher because the operator lacked the training to assess the information in terms of reasonable suspicion").

[30] *United States v. Massenburg*, 654 F.3d 480, 495 (4th Cir. 2011).

■ Agreeing with the Fourth Circuit, this Court concludes that uncommunicated information should not be considered when determining if an officer had reasonable suspicion or probable cause needed to conduct a search. As a result, assuming *arguendo* that Serrano had probable cause to search Defendant after Defendant allegedly disclosed that he had a weapon, the Court declines to impute the probable cause that Serrano had to Taylor.

## CONCLUSION

The Court finds that application of the collective knowledge doctrine is inappropriate in this matter. The vertical collective knowledge doctrine does not apply because the record does not reflect that Serrano told Taylor to pat down Defendant. In addition, the Court declines to apply the horizontal collective knowledge doctrine, finding that no binding precedent requires its application and that it runs contrary to the Fourth Amendment. Consequently, the Court determines that it did not commit clear error by granting Defendant's Motion and Memorandum to Suppress and it will deny the Motion for Reconsideration.

Accordingly, it is hereby

**ORDERED** that the People's Motion for Reconsideration of the Court's July 27, 2016 Order Granting Defendant's Motion to Suppress is **DENIED**; and it is further

**ORDERED** that a copy of this Order shall be directed to Assistant Attorney General Natasha Baker and Attorney Julie Smith Todman, Territorial Public Defender.