**FILED**
November 17, 2023 04:07 PM
ST-2023-CR-00156
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) | **CASE NO. ST-2023-CR-00156** |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LAQUAN ESSON ENGLAND, ) | |
| ) | |
| Defendant. ) | **2023 VI Super 69U** |
| ) | |

## MEMORANDUM OPINION AND ORDER

¶1      **THIS MATTER** came before the Court on November 6, 2023, for a hearing on Defendant Laquan Esson England's ("England or Defendant") Motion to Suppress, filed September 21, 2023. The People of the Virgin Islands ("the People") did not file a response to the Motion.[1] Assistant Attorney General Ebette M. Fortune appeared on behalf of the People. Defendant England appeared and was represented by David J. Cattie, Esquire. The People called, as their only witness and evidence, Virgin Islands Police Department Officer Aisha Somersall. For the reasons stated herein, the Court finds that the actions of the police violated the Fourth Amendment rights of the Defendant to be free from unreasonable searches and seizures and Defendant was in custody and subject to custodial interrogation without having been advised of his *Miranda* rights. Therefore, the motion to suppress is granted.

### I.      BACKGROUND AND PROCEDURAL POSTURE

¶2      On May 11, 2023, the People filed a five-count criminal information against Defendant charging: (1) Unauthorized Possession of a Firearm with a Conversion Kit in violation of V.I.

---

[1] At the discovery conference on September 25, 2023, the People requested two weeks to respond to Defendant's motion to suppress. The Court granted the request and issued an Order on September 28, 2023, directing the People to respond by October 11, 2023. Despite the People requesting additional time to respond and this Corut's Order, an opposition and/or a response was never filed by the People.

CODE ANN. tit. 14, § 2253(e); (2) Unauthorized Possession of a Machine Gun in violation of 14 V.I.C. §§ 2253(b) and (d)(2); (3) Unauthorized Possession of a Firearm within one Thousand Feet of a School in violation of 14 V.I.C. § 2252(f); (4) Unauthorized Possession of a Firearm in violation of 14 V.I.C. § 2253(a); and (5) Unauthorized Possession of Ammunition in violation of 14 V.I.C. § 2256(a)(3). The matter came before the Court for Arraignment on May 12, 2023, and England entered pleas of "not guilty" to all counts.

¶3 At the suppression hearing on November 6, 2023, the People called one witness, Officer Aisha Somersall of the Virgin Islands Police Department. Defendant's counsel examined the People's witness but did not call any witnesses. The People did not offer any exhibits as evidence.

¶4 England argues that the police officer's warrantless search of his vehicle on April 23, 2023, was an unconstitutional seizure under the Fourth Amendment of the United States Constitution. As such, England argues that the firearm that was taken as evidence during this search should be suppressed as fruit of an unconstitutional seizure and any statements made are also subject to suppression because any statements made were without a voluntary waiver of his rights against self-incrimination and rights to counsel under the Fifth and Sixth Amendments and the Revised Organic Act. The People argue that Officer Somersall acted in good faith and the firearm was obtained legally. The People also mentioned the firearm would have inevitably been discovered, however, the People did not put forth any evidence of how this would have occurred. The People also did not address whether Defendant's statements were legally obtained.

## II.    FACTS

¶5 On April 23, 2023, Virgin Islands Police Officer Aisha Somersall was dispatched to a car accident in Hospital Ground, involving only one vehicle. Upon arrival, Officer Somersall saw a

white Jeep Wrangler had struck a pole. The driver was in the Jeep, and it was still running. The Jeep was stopped, and the driver was unresponsive.

¶6     Officer Somersall knocked several times on the glass window and tried to wake the driver up but was unable. She noticed the driver's foot was on the brake and the car was still in drive. Officer Somersall opened the door, placed the car in park, and attempted to wake the driver up again by tapping on his shoulder, calling out to him, and shaking him a bit.

¶7     Officer Somersall then called 911 for emergency services. Officer Somersall was trained to try to wake people up if they are unresponsive. She looked around the car to see if he had identification, looked at his jewelry to see if he had a medical assistance bracelet, looked for his wallet to see if there was any identification or medication, but she did not find a wallet. Officer Somersall then opened a small grey pouch near the emergency brake, near the unresponsive male, and saw black firearm.

¶8     Officer Somersall did not observe any blood and did not smell alcohol. When Defendant woke up, he was confused and out of it. When Officer Somersall asked Defendant if he was ok and to stand up and come out of the car, he did. Officer Somersall then asked if the grey pouch was his, and he said yes. She also asked if he knew what was inside the pouch. Officer Somersall also remembered him saying the gun was not his. She then placed Defendant in a police vehicle.

¶9     On cross-examination Officer Somersall testified that when she arrived on the scene, she did not observe any broken glass. She also testified that when she received the dispatch to go to the scene there was no information about contraband or anything illegal, and she did not observe any drugs or anything illegal when she approached the vehicle until she opened the grey pouch. Officer Somersall had no suspicion of illegal activity and was not in fear for her safety. Officer Somersall observed that Defendant was not covered in blood, not grabbing his chest, and not

behaving as if having a medical incident. He was breathing normally and appeared like he was asleep. She did not perform CPR.

¶10    Officer Somersall testified she opened the grey pouch to look for identification and admitted she did not look in the glove box because the pouch was closer. Until she opened the pouch, she had no belief or suspicion that the vehicle contained any contraband or weapons. Defendant did not give Officer Somersall permission to search the pouch, and she did not search any other part of the vehicle.

¶11    When asked about statements Defendant made, Officer Somersall said she did not give Defendant his *Miranda* rights until he was at the police station, and he declined to give a statement. When asked about the statements made by Defendant at the scene, Officer Somersall indicated that Defendant was in custody when she asked him about the grey pouch and its' contents.

## III.    LEGAL STANDARD

### A. Motion to suppress physical evidence obtained through warrantless seizure of the defendant.

¶12    The Fourth Amendment of the United States Constitution and the Revised Organic Act of 1954 protect the people of the Virgin Islands from unreasonable searches and seizures.[2] The Fourth Amendment protection against unreasonable seizures has been long understood to include seizures of the person.[3] A seizure of the person occurs when a reasonable person, in view of all

---

[2] U.S. Const. amend. IV (stating, in relevant part, "the right of the people to be secure…against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause…describing the place to be searched, and the persons or things to be seized"); *see also* V.I.C. Rev. Org. Act of 1954 § 3 ("The right to be secure against unreasonable searches and seizures shall not be violated"); *see also People v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (stating that the Fourth Amendment of the United States Constitution applies to the Virgin Islands).

[3] *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (citing *Henry v. United States*, 361 U.S. 98, 100 (1959)); *see also Blyden v. People*, 53 V.I. 637, 647 (V.I. 2010) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1979)) (finding that "the Fourth Amendment 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest'").

the circumstances surrounding the incident, would not feel free to leave.[4]  The Supreme Court approved the exclusion of evidence as a sanction for violations of the Fourth Amendment in *Weeks v. United States*,[5] and the exclusionary rule was extended to the States in *Mapp v. Ohio*.[6]  Under the exclusionary rule, the Court must suppress evidence found to be a product of a Fourth Amendment violation.[7]  However, while the Fourth Amendment ensures an individual's rights to be secure from unreasonable search and seizures, it does not require a police officer to ignore a possible crime.[8]  The Fourth Amendment allows officers to conduct limited searches and seizures upon the reasonable suspicion of criminal activity.[9]  A warrantless search must be shown to fall within one of the few narrowly defined exceptions to the warrant requirement.[11]

¶13    On a motion to suppress, the burden of proof is ordinarily on the defendant who seeks to suppress evidence under the Fourth Amendment or a statement under the Fifth Amendment.[12]  However, once it has been established that a search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable.[13]  Warrantless searches and seizures are "*per se* unreasonable absent a few 'well-delineated

---

[4] *See Hodari D.*, 499 U.S. at 628; *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) (finding that "if a reasonable person would feel free to terminate the encounter, then he or she has not been seized"); *see also Blyden*, 53 V.I. at 647 (determining that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person…").

[5] 232 U.S. 383 (1914).

[6] 367 U.S. 643 (1961).

[7] *See id.* at 648.

[8] *See United States v. Chabot*, 19 V.I. 28, 35 (D.V.I. 1982) (finding that the Fourth Amendment does not require police officers "simply to shrug their shoulders and allow a crime to occur…").

[9] *See People v Looby*, 65 V.I. 84, 89 (V.I. Super. Ct. 2016 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (allowing a limited search and seizure without a warrant or probable cause "where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot…").

[11] *See Katz v. United States*, 389 U.S. 347, 357 (1967) *see also Gov't v. Fabiani-Ogno*, 20 V.I. 404, 409 (Terr. Ct. 1984).

[12] *People v. Prentice*, 64 V.I. 79, 89 (V.I. Super. Ct. 2016) (citing *United States v. Johnson*, 63 F.3d 242, 245 3d Cir. 1995)).

[13] *Id.*

exceptions.'"[14] The test for "reasonableness" is an objective inquiry analyzed by examining the totality of the circumstances surrounding the search or seizure.[15] If a search or seizure is found to be unreasonable, then evidence obtained through such searches and seizures is excluded in criminal prosecutions.[16]

¶14    This Court must apply a "totality of circumstances" analysis when deciding whether probable cause existed.[17] Under the test, "the totality of the circumstances - the whole picture - must be taken into account."[18] The inferences of a trained officer may be considered, and probabilities, not certainty, govern.[19]

¶15    Generally, a warrant is not required for a valid investigatory stop of a vehicle.[20] To justify a warrantless investigatory stop, however, the officer must possess reasonable suspicion of criminal activity based on the totality of the circumstances.[21]

¶16    Another widely recognized warrant exception, the so called "automobile exception" or "Carroll Doctrine,"[22] provides that no warrant is necessary to search a car when there is probable cause to believe that there is contraband or evidence of a crime in the automobile and exigent circumstances exist.[23]

---

[14] *People v. Pemberton*, 71 V.I. 251, 259 (V.I. Super. Ct. 2019) (citing *Browne v. People*, 56 V.I. 207, 217 (V.I. 2012)) (quoting *Katz*, 389 U.S. at 357).
[15] *Prentice*, 64 V.I. at 89 (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).
[16] *See id.* (citing *Mapp v. Ohio*, 367 U.S. 643, 654-57 (1961)).
[17] *United States v. Cortez*, 449 U.S. 411, 418 (1981).
[18] *Id.* at 417.
[19] *Id.*
[20] *United States v. Arvizu*, 534 U.S. 266 (2002).
[21] *Id.*
[22] *Carroll v. United States.*, 267 U.S. 132 (1925), and subsequently refined in *Chambers v. Maroney*, 399 U.S. 42 (1970) and *Coolidge v. N.H.*, 403 U.S. 443, 458-464 (1971).
[23] *Wyoming v. Houghton*, 526 U.S. 295 (1999).

¶17    Once a violation of *Miranda v. Arizona*[24] is claimed and Defendant alleges facts demonstrating that Defendant was in custody and subject to interrogation, the burden shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda* and the statement was voluntary.[25]  In order to demonstrate that a statement was unlawfully obtained, the accused must demonstrate that the Defendant provided testimonial information during a custodial interrogation and that there was no knowing, voluntary, and intelligent waiver of the Defendant's Miranda rights under the totality of the circumstances.  In this context, the Defendant is in custody if the Defendant is deprived of freedom in any significant way such that a reasonable person in the Defendant's position would not feel free to leave under the totality of the circumstances.  An interrogation occurs when the Defendant responds to express questioning or its functional equivalent – words or actions reasonably likely to elicit an incriminating response.

## IV.    ANALYSIS

¶18    Defendant seeks to suppress a Glock 26 with a black ARMA laser TR6 attached to the trigger guard; a magazine containing fifteen (15) 9mm cartridges; a black conversion kit modification; a Pearce Grip branded magazine containing fifteen (15) 9mm cartridges; and any statements made by Defendant at the scene.  Defendant argues that the physical evidence was obtained from an illegal search and seizure of his car and any statements made by England, as he was never advised of his *Miranda* Rights, are the result of custodial interrogation and should be suppressed.  Defendant argues he was unlawfully seized by police who illegally took evidence from his vehicle and elicited statements from him in violation of his Fourth, Fifth, and Sixth

---

[24] 384 U.S. 436, 475 (1979).
[25] *Colorado v. Connelly*, 479 U.S. 157 (1986).

Amendment rights. The People argue that officers from the Virgin Islands Police Department had acted in good faith and did not violate Defendant's rights.

### A.     There were no exigent circumstances to justify the subsequent warrantless search of the vehicle.

¶19     Exigent circumstances sufficient to justify a warrantless search include: (1) the danger that evidence will be destroyed;[26] (2) a threat to the safety of the public or law enforcement officers;[27] (3) hot pursuit of a suspect;[28] and (4) the danger a suspect will flee before a warrant can be obtained.[29] On the facts before the Court, none of those exigencies presented themselves to justify the warrantless search of the Defendant's vehicle.

¶20     Nothing in the record suggests that there was any danger that evidence would be destroyed. The police were clearly not in hot pursuit of anyone, and Defendant did not pose a threat to the safety of the public or Officer Somersall. There was also no evidence that Defendant would flee before a warrant could be obtained. Recognizing that there is no exception, the People attempt to justify the search as inevitable discovery, but do not put forth any testimony or evidence on how that would have occurred.

¶21     Further, the only testimony or evidence before the Court is that Officer Somersall saw a black firearm in a grey pouch. There is no evidence as to what type of firearm, if the firearm contained ammunition, or if any ammunition was recovered. Likewise, there is no evidence before the Court that a Glock 26 with a black ARMA laser TR6 attached to the trigger guard; a magazine

---

[26] *Cupp v. Murphy*, 412 U.S. 291, 294-96 (1973).
[27] *Warden v. Hayden*, 387 U.S. 204, 298-99 (1967).
[28] *Id.*
[29] *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

containing fifteen (15) 9mm cartridges; a black conversion kit modification; and a Pearce Grip branded magazine containing fifteen (15) 9mm cartridges were recovered.

¶22 Consequently, the warrantless search of the interior of the vehicle was invalid, and the Glock 26 with a black ARMA laser TR6 attached to the trigger guard; a magazine containing fifteen (15) 9mm cartridges; a black conversion kit modification; a Pearce Grip branded magazine containing fifteen (15) 9mm cartridges found inside the grey pouch must be suppressed.

### B.     Defendant's *Miranda* rights under the Fifth and Sixth Amendments were implicated by his statements to Officer Somersall

¶23 Defendant seeks to suppress his statement to Officer Somersall regarding the grey pouch and the contents. Defendant argues that the police officer's questioning that elicited these statements constituted a custodial interrogation without a voluntary waiver by Defendant of his rights against self-incrimination and his right to counsel under the Fifth and Sixth Amendments. The evidence before the Court is that Defendant was in custody when questioned by Officer Somersall and he was not *Mirandized* until he was booked at the police station, where he invoked his right to remain silent. The People presented no evidence or argument to refute that the questioning was custodial in nature which would have required Defendant be read his *Miranda* rights. Since Defendant was not *Mirandized*, and the evidence supports that Defendant was in custody when Officer Somersall questioned Defendant about the pouch and its' contents, the Court finds that Defendant's statements were the result of a custodial interrogation and taken in violation of his Fifth and Sixth Amendments and should be suppressed.

### V.     CONCLUSION

¶24 The Court finds that the People have failed to satisfy their burden of proving that the warrantless arrest of Defendant was reasonable under the Fourth Amendment because the People

have failed to show that the police's warrantless search satisfied any of the warrant exceptions. The evidence that Defendant seeks to suppress is therefore the fruit of an unconstitutional seizure and will be suppressed. Additionally, Defendant's statements to Officer Somersall were the product on his custodial interrogation and he did not knowingly, intelligently and voluntarily waive his *Miranda* rights.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Suppress is **GRANTED**; and it is further

**ORDERED** that a copy of this Order shall be directed to counsel of record.

DATED: November 16, 2023

HON. SIGRID M. TEJO
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court ____/____/____

By: _____  November 17, 2023
for LATOYA A. CAMACHO
Court Clerk Supervisor ____/____/_____